# 22-1864

In the

# United States Court of Appeals
## For the Second Circuit

MARJAY VANCEAH,

*Plaintiff-Counter-Defendant-Appellant,*

- v -

TIMOTHY DENTY,

*Defendant-Counter-Claimant-Appellee,*

NATIONAL RAILROAD PASSENGER CORPORATION,
d/b/a AMTRACK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

**RENE MYATT**
*Attorney for the Plaintiff-Counter-Defendant-Appellant*
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588
myattlegal.gmail.com

(10036)

# Table of Contents

STATEMENT OF JURISDICTION……………………………………….    1

STATEMENT OF ISSUES PRESENTED…………………………….    2

PRELIMINARY STATEMENT……………………………………….    3

STATEMENT OF THE CASE…………………………………………...    12

    A. Factual Background……………………………………………    12
    B. Procedural Background………………………………………….    12
        1. Deficiency Letters…………………………………………    19
        2. Conferences to Address Alleged Deficiencies………………… 21
          a. September 8, 2020 - Amtrak requested forensic analysis of Ms. Vanceah's  phone; the Court denied the request; Ms. Vanceah was required to submit an affidavit confirming there were no other documents…………………………………………… 21
          b. December 4, 2020 - Amtrak renews its request for a forensic analysis of Ms. Vanceah's phones………………………….. 23
          c. April 23, 2021 - District Court held that discovery be completed by July 23, 2021………………………………………… 26
          d. September 9, 2021 - Conference regarding the whereabouts of "Josh;" District Court ordered your undersigned to provide defendants with information about "Josh" and his employer..26

SUMMARY OF ARGUMENT……………………………………………… 28

STANDARD OF REVIEW……………………………………………… 29

ARGUMENT……………………………………………………… 31
    A. Sanctions………………………………………………………… 31
        1. Incomplete Discovery…………………………………………..31
        2. Text Messages from Mr. Dendy……………………………….. 32
        3. Mr. Dendy's Photo…………………………………………….. 33
        4. Deletion of Mr. Dendy's Photo………………………………… 34
        5. Duty to Preserve……………………………………………... 35
        6. Affidavits………………………………………………………36
        7. "Josh"…………………………………………………………30

8. Inherent Powers………………………………………... 42

CONCLUSION……………………………………………… 45

# Table of Authorities

## Cases

*Abreu v. City of New York,*
208 F.R.D. 526, 529 (S.D.N.Y. 2002)…………………………………….. 29

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 457 (2d Cir. 2007)……………………………………………………………………… 34

*Chambers v. NASCO, Inc.,*
501 U.S. 32, 43, 44 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991)……………….. 42, 43

*Chin v. Port Auth. of N.Y. & N.J.,*
685 F.3d 135, 162 (2d Cir. 2012)………………………………………..35

*DeCastro v. Kanadia,*
309 F.R.D. 167 (2015)…………………………………………………….. 34

*Hochberg v. Howlett,*
No. 92 Civ. 1822, 1994 WL 174337 (S.D.N.Y. May 3, 1994)……………… 30

*In re Anderson*, No. 14-22147 (RDD)
2022 WL 1926608 at *2 (Bankr. S.D.N.Y. June 3, 2022)……………………43

*In re Terrorist Bombings of U.S. Embassies in E. Afr.,*
552 F.3d 93, 148 (2d Cir. 2008)…………………………………………… 34

*John Wiley & Sons v. Book Dog Books*, LLC,
2015 WL 5769943, at *6 (S.D.N.Y. Oct. 2, 2015)………………………….. 35

*La Belle v. Barclays Capital Inc.*
*(S.D.N.Y. January 13, 2022)*340 F.R.D. 74………………………………….. 35

*Martinez v. City of New York,*
No. 16 cv 79, 2018 WL 604019 at 22 E.D.N.Y.)……………………………..30

*Murray v. City of Columbus,*
534 F. App'x 479, 485 (6th Cir. 2013)……………………………………..42

*National Hockey League, et al. v. Metropolitan Hockey Club, et al.,*
427 U. S. 639, 96 S. Ct. 2778,49 L. Ed. 2d 747 (1976)……………………… 29

*Residential Funding Corp. v. George*
306 F.3d 99 (2002)…………………………………………………………… 35

*R.J. Kitchen Associates, Inc. v. Skalski,*
*2018 WL 5456672* (E.D.N.Y. August 2, 2018)………………………………30

*Rossbach v, Montefiore Medical Center*, No. 19 Civ 5758 (DLC),
2021 WL 3421569 at *1-*3 (S.D.N.Y. Aug. 5, 2021)………………………..44

*S.E.C. v. Setteducate,*
419 Fed.Appx. 23 (2011)…………………………………………………… 37, 38

*Shepherd v. Annucci*
921 F. 3d 89 (2d Cir. 2019)……………………………………………..44

*Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*,
357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958)……………………… 30

*Southern New England Tel. Co. v. Global NAPs* Inc.,
624 F.3d 123, 144 (2d Cir. 2010) )……………………………………………30, 38

*Yukos Cap. S.A.R.L. v. Feldman*,
977 F.3d 216, 235 (2d Cir. 2020)…………………………………………… 42

## Statutes

Civil Rights Act of 1991 (as amended)……………………………………7

Fed. R. App. P. 4 (a)………………………………………………………… 7

Fed. R. Civ. P. 37(c)(1)…………………………………………………… 29

Fed. R. Civ. P. 37(b)(2)(A)(iii)–(v); 37(c)(1)(A)……………………………..29

New York City Human Rights Law,
New York City Administrative Code § 8-107………………………………….. 7

Rule 26(a) or (e)…………………………………………………………… 29

Rule 26(e)…………………………………………………………………..29

Title VII of the Civil Rights Act of 1964,
42 U.S.C. Section 2000e, *et seq*........................................................................ 7

**Other Authorities**

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse*
535, 558-59 (6th ed. 2020)…………………………………………………… 43

## Statement of Jurisdiction

This is an appeal from an August 2, 2022 Opinion and Order in the Southern District of New York (Hon. Edgardo Ramos). Judgement was entered on August 2, 2022, SA-2, and the district court had subject matter jurisdiction over this federal action for gender discrimination and retaliation in violation of the New York City Human Rights Law, New York City Administrative Code § 8-107 ("NYCHRL"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq.* (as amended) ("Title VII") and the Civil Rights Act of 1991 (as amended), as well as pendent state law claims. The plaintiff filed a timely notice of appeal under Fed. R. App. P. 4 (a) on August 23, 2022, SA 29. This Court has jurisdiction over the plaintiff's appeal of pursuant to 28 U.S.C. § 1291.

## Statement of Issues Presented

1. Did the District Court abuse its discretion in imposing the litigation-ending sanction of dismissal of the complaint with prejudice?

    A. Did the District Court erroneously find willfulness, bad faith, or any fault on the part of the plaintiff?

## I.    PRELIMINARY STATEMENT

This is a simple case. It is a case about an abuse of authority and power within the workplace. The claim is that a union boss uses overtime in exchange for sexual favors from a female coach cleaner. A union boss, who made it clear that if allegations were ever lodged against him, no one would believe her, and she would be terminated. So far, he has been proven right. Amtrak employed both parties, Marjay Vanceah, a coach cleaner, Timothy Dendy[1], a carman and chair of the union.

Amtrak became aware of Mr. Dendy's abuses when Ms. Vanceah filed her claim with Amtrak's hotline after she completed probation and secured her permanent position with Amtrak. Ms. Vanceah's complaint was based on Mr. Dendy having sent her a text of a picture of his erect penis. Amtrak never suspended Mr. Dendy during the investigation, nor did they terminate him. In fact, Amtrak told Mr. Dendy to stay away from Ms. Vanceah, an inappropriate response for any legitimate investigation. Amtrak performed a cursory investigation of Ms. Vanceah's claims, even requesting that both parties provide text messages between them. Both parties provided text messages and Amtrak reviewed over two hundred text messages between the two.

---

[1] Timothy Dendy was sued here as Timothy Denty. The correct spelling of the defendant-counter-claimant-appellee's last name is Dendy. The correct spelling will be used throughout this brief.

Contrary to the District Court's assessment of the interactions between the parties, this is not a case of flirtation. There was no relationship between the parties, and there was nothing complicated involving the parties' interaction with each other. Is this case messy, ugly, raw - - it is, but it not complex.

The allegations of discovery noncompliance may appear that way on the face of it, but that was not the way it was. Ms. Vanceah made certain assumptions, which gave the unfortunate impression that her actions were willful. In that regard, Ms. Vanceah's actions were more naïve than anything else. Ms. Vanceah, an African American woman who was twenty-nine at the time of the claims were made, was unsophisticated in her thinking and in her belief about her assessment of what was required to prove her case. As a result of simple thinking her actions and testimony gave the appearance of willful mendacity, when in fact it was naivete. Ms. Vanceah's attempt to explain that Mr. Dendy was abusing his power as a union boss and that sending her a picture of his penis was his way of exercising that power, was done inartfully.

How the case was unfolding - - with allegations of failing to "continuously" provide discovery, the conflicting testimony of the electronics person who assisted Ms. Vanceah in retrieving the penis picture from her phone - - it is little wonder that she was the one not to be believed. In her role as a probationary employee, Ms. Vanceah did not have the right to consent to an inappropriate sexual relationship

with Mr. Dendy, a person Amtrak introduced to her as a person in authority, in a leadership position and respected.

None of the actions cited by the District Court as discovery abuses by Ms. Vanceah were ever intended to disrespect the court or the discovery process. No action attributed to Ms. Vanceah was willful or in bad faith, nor did she have a culpable state of mind. Her understanding of the process may have been flawed, her expression of the facts inarticulate, and her delivery illogical, but it was never malicious or done with an intent to deceive or prejudice the other side.

Amtrak planned to overwhelm Ms. Vanceah in discovery by requesting a review of her entire private life showing she deserved the treatment by Mr. Dendy. Ms. Vanceah was a probational employee in an entry level position whose only goal was to obtain a career position with Amtrak. Amtrak has sent a draconian message to all low-level employees, if you challenge Amtrak's hierarchy you will be terminated.

For the reasons that follow the District Court's decision should be reversed.

## II.   STATEMENT OF THE CASE

### A. Factual Background

Then twenty-nine-year-old Marjay Vanceah a young Black woman began working for Amtrak as a coach cleaner on August 21, 2017. A-16, 17. During her orientation she was told she had a six-month probation period, and that lateness and absences were taken very seriously; and that during that time that she would probably make little or no overtime. A-16 ¶ 21. Then forty-eight-year-old Timothy Dendy was Ms. Vanceah's superior and the union chairman. Mr. Dendy used his position to assign overtime to Ms. Vanceah, A-17-28, and was using his position and power to assign overtime to obtain sexual favors from Ms. Vanceah A-19 ¶ 37. There was never a relationship between Ms. Vanceah and Mr. Dendy. A-842. He described the nature of his relationship with Ms. Vanceah as a flirting thing. SA-4. There was nothing complicated about the way the parties behaved toward each other. Mr. Dendy was the union boss and thereby Ms. Vanceah's superior, and she recognized he had the power and the authority.

The parties did exchange text messages while she was on probation and when she became a permanent employee. They had one sexual encounter when Mr. Dendy appeared unannounced and unexpected at Ms. Vanceah's residence in Pennsylvania and persuaded her that he needed to stay the night under the guise that he had not received her text canceling their meeting and he could not go

12

anywhere else. A-17, 26. After that one sexual encounter, Ms. Vanceah wanted no further contact with Mr. Dendy. A-17, 28. She new that no contact with Mr. Dendy was unrealistic because the nature of her job dictated that she would have to be available via phone for assignments. Mr. Dendy was responsible for assigning employees overtime work, and he had assigned overtime to Ms. Vanceah during her probationary period. A-17, 28.

Mr. Dendy continued to make sexual advances towards Ms. Vanceah, and she continued to rebuff those advances. Mr. Dendy continued his pursuit. In mid-December 2017, Mr. Dendy sent Ms. Vanceah, an unsolicited picture of his erect penis via text. A-17 ¶ 30. As Ms. Vanceah continued to rebuff Mr. Dendy's sexual advances, Mr. Dendy caused Ms. Vanceah's overtime to cease. A-18 ¶ 31.

When Ms. Vanceah successfully completed her probation, she became a permanent employee, secure in the knowledge that she could not be retaliated against or possibly terminated if she filed a complaint against Mr. Dendy, or so she thought. A-18 ¶ 32. She informed a superior, Veronica Hayes about Mr. Dendy sending her the picture of his penis and the overtime he caused to end. Ms. Vanceah's superior called the superintendent Chris Barnes, who instructed Ms. Vanceah to call the ethics hotline. A-18 ¶ 32. Ms. Vanceah filed her complaint with the Amtrak ethics hotline and was promised an update every thirty days. A-18

¶ 32. She provided the ethics office fifty-eight pages of text messages that she and Mr. Dendy exchanged. A-168. Ms. Vanceah never received any update. A-18 ¶ 32.

Amtrak conducted a cursory investigation, telling Mr. Dendy to vacate any of the premises where Ms. Vanceah worked. A-19 ¶ 35. Even Amtrak's cursory investigation found that Mr. Dendy did not deny sending the picture of his penis to Ms. Vanceah. A-18 ¶ 34. He said that he sent the picture accidentally to Ms. Vanceah as it was intended for his Dominican girlfriend. A-18 ¶ 34. Amtrak also requested text messages from his phone between him and Ms. Vanceah.

Recognizing that she was getting no recourse based on her complaint, Ms. Vanceah filed a grievance with another union representative, Shelton Gray. At Mr. Dendy's direction, Mr. Gray failed to file Ms. Vanceah's grievance. Mr. Gray failed to file Ms. Vanceah's grievance under the guise that the document was not notarized. A-18 ¶ 34. Ms. Vanceah then reported the matter to the Amtrak police, who, likewise, was dismissive of her claims and did nothing. A-19 ¶ 36.

Mr. Dendy, recognizing the severity of the charges against him - - that of praying on young new female hires - - created a storyline that suggested that he and Ms. Vanceah had a longstanding, mutually "flirtatious relationship," A-842, when that was far from the case. For example, Mr. Dendy's text message showing that Ms. Vanceah sent him a text saying, "Merry Christmas babe" A-260, was

14

never explored for an explanation, thus creating the impression that some type of mutual flirtation was taking place between the two parties.

Ms. Vanceah's case is about Mr. Dendy retaliating against her when she refused to have a sexual relationship with him. A-19 ¶ 37, and Amtrak having done nothing to stop Mr. Dendy's abuse of his position. A-19 ¶ 37, Amtrak, obviously concerned about its own reputation in the lawsuit, have made it clear that they do not represent Mr. Dendy. A-168, footnote 1 However, they are using Mr. Dendy's storyline to destroy this young woman.

**B. Procedural Background**

The procedural history is neither long nor complicated. Amtrak had been so effective at using Mr. Dendy's storyline that they continued to raise suspicions that Ms. Vanceah was not the truthful one, when in fact her particular claims against Amtrak and Mr. Dendy had been consistent. Mr. Dendy sent a picture of his penis to Ms. Vanceah. A-18 ¶ 34. He initially said he sent a picture of his anatomy to her by accident. A-18 ¶34. He later said, he sent the anatomy picture to Ms. Vanceah because she allegedly sent a picture of her buttocks to him. A-843.

Ms. Vanceah filed a complaint with the EEOC Commission and received a right to sue letter on July 25, 2018. A-15, 16. She filed her federal lawsuit on October 15, 2018. A-13. The parties participated in an Automatic Referral to

Mediation which was held on May 29, 2019. A-5. Ms. Vanceah filed two sets of

initial disclosures on  September 9, 2019 and September 12, 2019. A-262, A-274.

Amtrak had fifty-eight pages of Ms. Vanceah's text message exchange with

Mr. Dendy in its possession from when they purported to conduct its internal

investigation. The initial disclosures contained five pages of text messages

pertaining to Ms. Vanceah's claims of sexual harassment and retaliation. The

initial complaint was supplemented by Ms. Vanceah as she added a copy of the

EEOC complaint. A-504 – A-509. Ms. Vanceah was not being evasive or deceitful

when she stated that was all the relevant materials in her possession. She could not

have known at the time she filed her complaint with Amtrak and her federal

lawsuit that Mr. Dendy would spin the story to fit his narrative, and thus she did

not believe she had to provide anything that was not spot-on with her claims of

sexual harassment and retaliation. Any other exchanges between the two of them,

she did not realize would be used against her to tell a different story and thus her

responses of having nothing further in her possession was truthful.

Ms. Vanceah's response to interrogatories dated November 6, 2019 A-450,

"see attached" reference where nothing was attached was an oversight. There was

nothing willful about the lapse in providing the documents referenced therein. The

November 23, 2019 responses were to the best of Ms. Vanceah's understanding,

responsive. Since the question put forth was for "all relevant documents on which

she intended to rely," Ms. Vanceah, was again being truthful for her part, she did not see that she was going to rely on anything else, and therefore there was nothing else for her to produce. Ms. Vanceah did not fully understand what was being asked of her, sine she had "previously provided" relevant documentation to Amtrak, she misunderstood that since Amtrak's internal investigative office already had the fifty-eight pages of text messages, she earnestly believed that she complied and satisfied the request.

There was no good faith basis for Ms. Vanceah to produce all of her mobile devices. If Amtrak already had fifty-eight page of text messages along with the picture of Mr. Dendy's anatomy and his text messages between the two of them, coupled with his confession that he sent Ms. Vanceah the penis picture, what Amtrak was seeking in demanding Ms. Vanceah's mobile devices was an attempt to find something unrelated to her claims against Mr. Dendy, that would make her claims sound unbelievable. The fact that Ms. Vanceah could not understand that Mr. Dendy's lies could be believed, and her truth could not, means that she was naïve, and she perhaps acted in a way to protect her own integrity, but her actions were never willful or in bad faith. In fact, Ms. Vanceah offered at one of her multiple depositions to go through her phone to provide whatever it was Amtrak was looking for, but at that point Amtrak was not interested in getting any text

messages because they had already concluded that they had caught Ms. Vanceah in a lie.

As Ms. Vanceah tried to respond to the discovery demands, she reiterated she had no *documents* relating to the complaints made to Amtrak's ethics hotline, that she had no *documents* related to her federal complaint, other than the EEOC right to sue letter and her text messages relating to the allegation of Mr. Dendy's abuse of his position to get sexual compliance from her, which was the penis picture. (Emphasis added)

It became readily apparent that Amtrak was fishing into Ms. Vanceah's private life to see if there was anything they could use unrelated to her claims against Mr. Dendy that would impact negatively upon her credibility. Amtrak did employ such tactics, when the District Court ordered the examination of Ms. Vanceah's phones and Amtrak found a video on her phone of a man receiving fellacio. Over objection, Amtrak explored a line of questioning giving the impression that not only was Ms. Vanceah having an affair with the man in the video but was having his baby. The couple in the video are married friends of hers. Amtrak was no longer interested in the allegations of sexual harassment and retaliation; they were interested in her.

Amtrak created this narrative of noncompliance when Ms. Vanceah had no documents to give them, other than what had already been in the hands of

Amtrak's ethic's office. With the narrative of noncompliance looming large, Amtrak sent three deficiency letters, November 18, 2019 A-480, June 1, 2020 A-490, and July 10, 2020 A-510. The deficiency letters addressed the following pertinent issues:

## 1. **Deficiency Letters**:

*Deficiency letter #1 – (1) the responses were unverified, (2) the documents Plaintiff cited were not actually attached, and (3) Plaintiff did not state any ground for objecting to identifying her cell phones.

* Deficiency letter #2 – why only 5 pages of texts sent and if any materials previously existed but were deleted, to explain why they were deleted.

*Deficiency letter #3 – Amtrak sought inspection of Plaintiff's personal phone, as she alleged only her business phone was stolen.

Ms. Vanceah responded to the first deficiency letter on April 30, 2020. A-484. The fact that no text messages were attached to the document provided was an oversight and that no materials were deleted. Ms. Vanceah's response to the second deficiency letter indicated that she had two phones, one that she used for personal and one that she used for business. A-496. Ms. Vanceah was not hiding the existence of a second phone, her unfortunate thought was that the only phone at issue would be the phone where Mr. Dendy sent the penis picture, and therefore pursuit of any other phone was indeed a fishing expedition. Furthermore, the fact

that Ms. Vanceah did not back-up her phone cannot be looked upon as any attempt to get rid of anything incriminating. Many people do not back-up their data, and fewer still know how. Ms. Vanceah did in fact produce texts between herself and Jennifer Montgomery, the Amtrak employee responsible for assigning the overtime shifts, and who stopped giving Ms. Vanceah overtime after Mr. Dendy interceded. SA-7.

In an email to all defense counsel on September 10, 2019, where Ms. Vanceah provided a copy of her initial disclosures, because of the graphic nature of the anatomy photo, it was not emailed to counsel, it was mailed instead. The parties were sent a copy of Mr. Dendy's anatomy on June 23, 2020 via Google Drive, after Mr. Dendy testified at his deposition denying that the photo Ms. Vanceah had was his penis but admitting that he did send her a picture of his penis. A-844.

The third deficiency letter questioned Ms. Vanceah's veracity regarding "lost" versus "stolen" business phone. The words lost are stolen is a matter of semantics, the bottom line is that the phone no longer exists. Ms. Vanceah is perhaps like many people who do not file police reports for a stolen phone. Ms. Vanceah's objection to her phone being examined was because of her concern about the invasion of her privacy. Cell phones are personal and private because they hold many personal and private information - - they are hugely guarded and

protected with passwords and facial recognitions to ensure privacy. To have

allowed Amtrak to look through Ms. Vanceah's cell phones was the equivalent of

allowing Amtrak to look through her life, and to comment, question, and pass

judgment on whatever was gleaned from there. Thus, for Ms. Vanceah, such an

invasion was an attempt to assassinate her character once they looked inside her

phone as they would easily have made snap judgments about her and her life.

Ms. Vanceah's characterization that Amtrak was being "insensitive to

women and especially women of color," rings true for her because she knows all

too well that a young attractive woman, and particularly a Black woman, is seen as

promiscuous. Thus, the sole purpose of going through Ms. Vanceah's phone was to

support a theory of her promiscuity, and thereby undermine her case; and if she

refused, she would be the one in jeopardy.

### 2. **Conferences to Address the Alleged Deficiencies**:

There were four conferences to address the alleged deficiencies:

### a. **September 8, 2020 – Amtrak requested forensic analysis of Ms. Vanceah's phone; the Court denied the request; Ms. Vanceah was required to submit an affidavit confirming there were no other documents**

Ms. Vanceah signed two affidavits on September 30, 2020 affirming she had two

cell phones, one personal and one for business; that the penis picture had been sent

to her personal cell phone. Ms. Vanceah did not contradict herself when she said

that the photo was sent to her business phone, as nowadays, young people use

21

multiple phones interchangeably, where the description of personal and business is more fluid and less literal. In fact, Ms. Vanceah was perhaps trying to sound more sophisticated than she actually was, when she referred to a personal and business phone.

Ms. Vanceah's depositions were conducted virtually over the course of four days. Again, there was no contradiction between speaking with Mr. Dendy on both phones, if both phones are used interchangeably, particularly if a battery should die on one, then the other cell phone would be utilized.

The District Court's view of Ms. Vanceah saying that she deleted "screenshots of communications," as a blatant violation is misapplied. Ms. Vanceah denied she deleted texts, she deleted screenshots. Screenshots are copies of text messages. Any deletion of screenshots does not mean that the text messages have been deleted.

Ms. Vanceah was not being deceptive, and it is true that Amtrak was trying to depict her as a liar. Her unsophistication with the process and perhaps truly misunderstanding what she was being asked, took little effort to confuse her. Ms. Vanceah responded to questions as best she could, based on what she understood the questions to mean. Amtrak was having fun with this unsophisticated young woman, as she tried to answer questions without sacrificing her own pride and not wanting to appear as an incompetent witness.

**b. December 4, 2020 – Amtrak renews its request for a forensic analysis of Ms. Vanceah's phones**

Ms. Vanceah has been adamant that she has not deleted any text messages from her phone during the litigation. If she were asked did she delete anything from her phone, the answer would be yes, as far as screenshots are concerned, but not the actual texts. Because Amtrak wants to leave Ms. Vanceah's answer to deletions blowing in the proverbial wind, they made the case for their second request for a forensic analysis. Ms. Vanceah was refusing to pay for the forensics, one, because she was the one victimized and two, she did not have the money to pay thousands of dollars for forensics - - she was a terminated coach cleaner with no available resources.

Additionally, with respect to Mr. Dendy's testimony that he sent Ms. Vanceah a picture of his penis in response to her sending him a picture of a woman's buttocks.[2] The absurdity of Mr. Dendy's statement reveals that he lost all control and sent her a picture of his penis when he saw the female buttocks. Ms. Vanceah testified that it was not a picture of her buttocks, it was a picture of her friend's buttocks. Moreover, contrary to Mr. Dendy's testimony, the buttocks photo did not immediately precede the penis picture.

---

[2] Mr. Dendy claimed it was a picture of Ms. Vanceah's buttocks.

The District Court ordered the forensics, ordered that Ms. Vanceah make available both phones, and ordered that she pay for the cost.[3]

As discovery continued, joint requests for further extension of time to complete discovery was granted.

The District Court's view that the fact that Constilio, the forensics expert, found no records of communication with Mr. Dendy, although Mr. Dendy produced text messages "suggest[ed] [Ms.] Vanceah had deleted those communications is unfounded. Constilio produced nothing that any texts were deleted. In fact, Constilio found no evidence of Mr. Dendy's penis picture on either Ms. Vanceah's phones, in spite of Mr. Dendy's confession that he sent Ms. Vanceah a picture of his penis. SA-11.

Ms. Vanceah's testimony that the case "was not about the picture" but was about Mr. Dendy's abuse of power, was not a contradiction. Her response was that of an unsophisticated layperson, not a lawyer. All she knew is that Mr. Dendy sent her a picture of his penis and he took away her overtime when she would not continue a sexual relationship with him. Moreover, she did not contradict your undersigned's statement that the buttocks picture was a meme, she merely said, she

---

[3] The cost was $16,000.00

meant to send him sneakers, that "it was not a picture of her buttocks but was that of a friend, which would still be categorized as a meme.[4]

Mr. Dendy's letter to the District Court where he accused Ms. Vanceah of "blatant harassment" is classic abuser. He mischaracterizes her testimony and then says that she is harassing him. There was always going to be an imbalance of power between Ms. Vanceah and Mr. Dendy because she was a coach cleaner, and he was a union boss. Ms. Vanceah described the one sexual encounter with Mr. Dendy where she told him to stop. She testified upon inquiry at her deposition that the one sexual encounter was consensual. There is nothing else she can say given the power dynamic between a coach cleaner and a union boss - - the outcome reads like a grade-B movie.

Ms. Vanceah's misunderstanding of the questions surrounding when she employed "Josh" from the electronics store to assist her with getting Mr. Dendy's penis picture from her phone is typical. Many laypeople do not understand the subtle differences between, complaint filed at the job, versus complaint filed in with an agency, such as EEOC, versus a complaint filed in federal court, which is the lawsuit. Ms. Vanceah needed to retrieve the anatomy picture from her phone to give to Shazrae Mian at Amtrak ethics hotline.

**c. April 23, 2021 – District Court held that discovery be completed by July 23, 2021**

---

[4] Meme is an image that is remixed, copies, and circulated in a shared cultural experience online.

25

Ms. Vanceah filed an Answer to Mr. Dendy's counterclaim. Mr. Dendy audaciously asserted that she "urge[d] him to engage in a personal relationship with her" and that she had "lodg[ed} false claims of misconduct against him. A-34. Ms. Vanceah moved for a forensic analysis of Mr. Dendy's phone because he testified that he had deleted items from his phone, including the penis picture. SA-12. Mr. Dendy, objecting to Ms. Vanceah's request for a forensic analysis of his phone, now, surprisingly, was calling her request a fishing expedition. Mr. Dendy maintained there was no need for an analysis because he did not deny sending the photo. Mr. Dendy was just as concerned about protecting his privacy as Ms. Vanceah was about protecting hers. Mr. Dendy chose to provide a copy of the penis picture he had in his possession. SA-13.

### d. September 9, 2021 – Conference regarding the whereabouts of "Josh;" District Court ordered your undersigned to provide defendants with information about "Josh" and his employer

Your undersigned traveled to New Jersey to locate the electronics store Ms. Vanceah visited when she had Josh search her phone for the penis picture. Your undersigned located Josh through the prior owner of the electronics store that was out of business. The former owner gave your undersigned Josh's number and your undersigned spoke with him. Your undersigned provided Josh's cell number to counsel for the defendants. Contrary to the court's conclusion, it was not Amtrak

that located Josh, it was your undersigned who located him and provided his contact information and directed by the District Court.

The non-party testimony contradicting Ms. Vanceah is no surprise. Josue Rondue was very clear that he was frightened, intimidated, and threatened by the defense attorneys who called him. He received a call from the defense lawyers who told him he was in trouble. A-859 - A864. If he wanted to stay out of trouble, it is little wonder that he would contradict Ms. Vanceah's account of how he retrieved the penis photo for her.

Amtrak filed for leave to filed sanctions against Ms. Vanceah and your undersigned and that request was granted the next day. Mr. Dendy joined Amtrak's motion seeking dismissal of Ms. Vanceah's lawsuit, at which point he would withdraw his counterclaims. Mr. Dendy did not take a position on whether the District Court should sanction your undersigned. A-781.

### III.   SUMMARY OF THE ARGUMENT

Under the District Court's ruling, Marjay Vanceah, who was subjected to sexual harassment and retaliation at Amtrak by Timothy Dendy, a union boss, is barred from pursuing her claims against Amtrak and Mr. Dendy on the basis that she exercised willful and bad faith noncompliance with the discovery process.

The District Court erred in dismissing Ms. Vanceah's complaint because her actions were misinterpreted or misunderstood, but they were not willful, within bad faith nor had she exhibited a culpable state of mind.

Fundamentally, the District Court's analysis suggests that Amtrak's hierarchy cannot be held accountable for sexual harassment and retaliation of entry level employees such as coach cleaners as long as the accuser is portrayed as a willful abuser of the discovery process.

For these reasons, this Court should reverse the District Court's dismissal of this action.

## IV.    STANDARD OF REVIEW

It is well-settled that a court may sanction a party that "fails to provide information" under Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Rule 26(e) provides that

(e) SUPPLEMENTING DISCLOSURES AND RESPONSES.

(1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court

Fed. R. Civ. P. 26(e)(1). Courts may impose, *inter alia*, the following sanctions under Rule 37(c)(1) for violation of Rule 26(e): imposition of attorneys' fees and costs expended, preclusion of the information at trial, or dismissal of the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(iii)–(v); 37(c)(1)(A). In selecting the appropriate sanction, the Court may consider the full record in the case. *Abreu v. City of New York,* 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

The sanctions of striking pleadings and dismissal are the most extreme sanctions available. *See National Hockey League, et al. v. Metropolitan Hockey Club, et al.,* 427 U. S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976). Dismissal is appropriate "only when the noncompliance is due to willfulness, bad faith, fault, or gross negligence rather than inability to comply or mere oversight. *Abreu v. City of*

*New York,* 208 F.R.D. 526, 529 (S.D.N.Y. 2002) *citing Hochberg v. Howlett,* No. 92 Civ. 1822, 1994 WL 174337 (S.D.N.Y. May 3, 1994) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958).

"Courts generally consider the following factors in determining whether to exercise their discretion to enter default judgment or to impose another dispositive sanction: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of non-compliance.' " *R.J. Kitchen Associates, Inc. v. Skalski, 2018 WL 5456672* (E.D.N.Y. August 2, 2018) (*citing Martinez v. City of New York,* No. 16 cv 79, 2018 WL 604019 at 22 E.D.N.Y.) "No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned." *Martinez*, 2018 WL 604019, at *23 (*citing Southern New England Tel. Co. v. Global NAPs* Inc., 624 F.3d 123, 144 (2d Cir. 2010) ).

## V.    ARGUMENT

### A. Sanctions

Ms. Vanceah's claim is based on Mr. Dendy's abuse of his authority and power as a union boss, his sexual harassment of Ms. Vanceah, and his retaliation for her complaint of his unsolicited sexual behavior towards her. The picture of Mr. Dendy's penis that he sent to Ms. Vanceah of his own volition was a demonstration of the sexual harassment. The text messages between Ms. Vanceah and Mr. Dendy were light banter, and the only one who wanted to elevate the banter to flirtation, romance, and sex was Amtrak.

### 1. <u>Incomplete Discovery</u>

Ms. Vanceah's initial disclosures were incomplete. She provided five pages of text messages of what related to her claim of Mr. Dendy doling out the overtime to her. A-262. The light banter between the two of them did not relate to her claims as she saw it. Amtrak's investigative officer, Shazrae Mian requested text message between the parties. Ms. Vanceah sent fifty-eight pages to Ms. Mian, not with any thought whether something was related to any legal claims - - because she is not a lawyer - - but because the text messages between them was requested and she provided them to Ms. Mian.

Ms. Vanceah's First Set of Interrogatories being unverified and not having attached the texts between the parties, was an oversight, and was not intentional.

Amtrak's deficiency letter dated November 18, 2019 cited the oversight of not having the responses verified and not attaching the documents that were indicated as attached. Amtrak's deficiency letter also referenced the fact that there was no reason provided as to why Ms. Vanceah would object to identifying "all mobile devices, including cellular phones, tablets, providing the make and model number, dates of use, telephone account number(s), and service provider for each device [she] used from August 9, 2017 to the present." After the parties discussed the discovery on April 27, 2020, Ms. Vanceah signed the document on May 4, 2020.

## 2. **Text Messages From Mr. Dendy**

Ms. Vanceah's testimony regarding text messages and her phones can be confusing to be sure, but she was not "shifting explanations about her phone." Ms. Vanceah explained that she really does not make a distinction between her phones, as business and personal. She says that "it's just [her] phone. If [she] has another phone and it went dead, [she] use[s] [that] phone and vice versa so it wasn't like this is for my business only and this is for my personal only. It's whichever one was available" A-813. Mr. Dendy asked Ms. Vanceah for dates on her personal

cell phone (i.e., the 323 number). She also exchanged text messages and phone calls with Mr. Dendy on her business phone (i.e., the 908 number). A-815 – A-817.

### 3. **Mr. Dendy's Photo**

Contrary to the District Court's assessment, the photo of Mr. Dendy' penis was sent to counsel via mail with the initial disclosures in November 2019. It was after Mr. Dendy's deposition, when counsel requested a copy of the penis photo your undersigned exhibited and questioned Mr. Dendy about on June 15, 2020 that your undersigned emailed a copy of the penis photo to counsel. In other words, the penis photo was not produced two years after the Complaint was filed, but during initial disclosures. Certainly, if the photo was Ms. Vanceah's "smoking gun," there was no reason for her not to produce at the outset.

Ms. Vanceah's testimony that she only provided one photo of Mr. Dendy's penis, because one picture [of his penis] was enough, is not inconsistent testimony. Both penis pictures were sent to her on the same day during the same time, and she surmised that perhaps Mr. Dendy was sending her two different angles of his penis. Ms. Vanceah certainly was not trying to hide anything, for what would be the motive, it would have indeed strengthened her case to say Mr. Dendy sent two photos of his penis, but as naïve as some would find her response - - one is definitely enough.

Ms. Vanceah's deletion of text messages was not intentional, was not willful within the meaning of deception. *Cf. DeCastro v. Kanadia,* 309 F.R.D. 167 (2015). Any deletion done by Ms. Vanceah was not for the purpose of avoiding production. She deleted the penis picture from her phone right after Mr. Dendy sent it to her, not for some nefarious reason, but because it was something disgusting she did not want on her phone. After it was retrieved by Josh, she again deleted the disgusting photo because at that point she needed to free up memory on her phone and removing that disgusting photo was within her purview, so she thought. Additionally, Ms. Vanceah has not "deliberately engaged in the spoilation of evidence and made false and misleading statements to try to avoid her discovery obligation and obscure her conduct," *cf. DeCastro.* Ms. Vanceah may be naïve and unsophisticated, but she never flouted discovery orders.

### 4. **Deletion of Mr. Dendy's Photo**

The governing law on spoilation of evidence is defined as "the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) (internal quotation marks omitted) (*quoting Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 457 (2d Cir. 2007)). A party seeking sanctions for spoilation has the burden of establishing the elements of a spoliation claim. *See*

34

*Residential Funding*, 306 F.3d 99, 107 (2002) (citation omitted); *accord John Wiley & Sons v. Book Dog Books, LLC*, 2015 WL 5769943, at *6 (S.D.N.Y. Oct. 2, 2015) (citations omitted). These elements are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted) (*quoting Residential Funding*, 306 F.3d at 107).

Ms. Vanceah's deletion of the penis photo and any text messages was not done with a "culpable state of mind." The deletions of the penis photo were not relevant to the defendants' defense, because Mr. Dendy admitted sending a picture of his penis to Ms. Vanceah, however, he claimed that the photo she produced was not a picture of his penis.

5. **Duty to Preserve**

Under any consideration of spoilation, the question is always whether there was a duty to preserve. *See La Belle v. Barclays Capital Inc. (S.D.N.Y. January 13, 2022) 340 F.R.D. 74.* Amtrak must show Ms. Vanceah had a duty to preserve the penis photo at the time it was deleted. When she deleted the photo initially, it was

35

right after he sent it that day in December 2017. During that time, she was under

no duty to preserve. Although, Ms. Vanceah's testimony revealed the next time she

deleted the penis photo was after Josh retrieved it for her and after the lawsuit was

filed. Your undersigned submits that Ms. Vanceah misremembered the chronology

of the events. Once Ms. Vanceah deleted the penis photo after Mr. Dendy sent it to

her, she had to retrieve it in order to provide it to Shazrae at Amtrak. Your

undersigned submits that it was at that time that Ms. Vanceah asked Josh to

recover the photo for her and when she then gave it to Shazrae. In both instances, a

federal lawsuit had not been commenced.

### 6. **Affidavits**

The affidavits provided by Ms. Vanceah did not contradict her deposition

testimony. There was nothing on her business phone related to her claims of sexual

harassment and retaliation by Mr. Dendy. Whether Ms. Vanceah used a personal

phone and sometimes used a business phone does not conflict with her testimony

that Mr. Dendy sent her an unsolicited picture of his penis. The fact that there is a

debate about whether her phone was lost or stolen, also does not shake her claims

of sexual harassment and retaliation. Ms. Vanceah wanted to talk about her claims

and Amtrak wanted to engage Ms. Vanceah in semantics. As indicated above, the

text messaging history between Mr. Dendy and Ms. Vanceah was light banter until

he sent her his penis photo. Unfortunately, misunderstanding what was required of

her, she, on her own, produced what she felt bothered her the most. Perhaps stated inartfully, but Ms. Vanceah honestly believed that Mr. Dendy's penis picture and some texts related to overtime was all that was required to support her claims.

The egregious conduct attributed to Ms. Vanceah is misplaced. Ms. Vanceah's alleged conduct was in no way analogous to the *pro se* defendant in *S.E.C. v. Setteducate,* 419 Fed.Appx. 23 (2011). There *Setteducate* "(1) failed to produce documents requested by the S.E.C. in violation of the district court's April 2009, and extended June 2009 deadlines; (2) he refused to appear for his October 2009 deposition and violated the district court's two orders to appear for his November 2009 and December 2009 depositions; (3) his conduct was willful and deliberate, as evidenced by his refusal to attend the November 2009 deposition despite having chosen the date himself, and his last minute notices informing the S.E.C. of his refusal to attend depositions; (4) his repeated non-compliance with discovery requirements created a substantial delay in the case, requiring multiple extensions of the discovery period; (5) the district court's two warnings gave him sufficient notice that further non-compliance would result in sanctions, including the striking of his answer and the entry of default judgment; and (6) his behavior was consistent with a deliberate strategy to delay resolution of the case, where there was a strong public interest in prompt disposition." Contrary to the District Court's view, Ms. Vanceah's conduct does not parallel the egregious

37

conduct of *Setteducate*. With all due respect to the District Court, there is simply

no way that a coach cleaner can be compared to a sophisticated defendant

[*Setteducate*] who allegedly defrauded investors out of millions of dollars. Ms.

Vanceah has never refused to appear at depositions - - in fact she appeared at four -

- never refused to turn over documents to Amtrak, never been warned of a failing

to produce documents and then ignored a warning.

Furthermore, Ms. Vanceah cannot be likened to the parties in the

telecommunications litigation in *Southern New England Telephone Co. v. Global*

*NAPs Inc.,* 624 F. 3d 123 (2010). There, defendant *Global* failed over the course

of *two years* to produce its financial records and otherwise to comply meaningfully

with the district court's disclosure order. (Emphasis in original) "For several

months *Global* claimed that the relevant records were not in its custody … never

produced its general ledger … nor did it ever obtain and produce records that were

later shown to be in the possession of the accountant, a third party." *Southern New*

*England Telephone Co.* at 140.

There were efforts to address discovery issues as the parties filed joint letters

on April 28, 2020, June 26, 2020, and August 21, 2020 to extend the time to

complete discovery from the time of the initial conference which was held on

December 12, 2019. Accordingly, there was never any attempt to purposely delay

the discovery process. Moreover, deficiency letters sent by Amtrak between

November 2019 and July 2020 highlighting Ms. Vanceah's alleged discovery

failures pales in comparison to the defendant *Global's* failure "over the course of

*two years* to produce its financial records."

Perhaps Ms. Vanceah was mistaken to think that just because she saw her

light banter texts between her and Mr. Dendy had nothing to do with her claims of

sexual harassment and retaliation, she thought the District Court saw it too. She

mistakenly thought the District Court could see that the attempts to dive into her

personal life, by gaining access to her phones, would allow Amtrak to create a

narrative that this was somehow a consensual relationship between her and Mr.

Dendy.

Ms. Vanceah was mistaken about the discovery process. She believed that

since Amtrak already had the text messages from the internal investigation, that

there was no need to provide them again. It was not that Amtrak did not have the

text messages and the penis photo, they wanted them again as part of the litigation

process, and this was something Ms. Vanceah misunderstood.

The District Court found that Ms. Vanceah's explanation of deleting Mr.

Dendy's photo because it was disgusting as "plainly unreasonable in the context of

a gender discrimination case in federal court." With all due respect to the District

Court's impression, for the victim to say she deleted a picture of the sexual

harasser's penis picture because it is disgusting is not unreasonable. Again, with all due respect to the District Court, it is difficult to miss the insensitivity of that statement.

Ms. Vanceah is not making excuses; she is trying to explain herself and her failed understanding of the process which allowed the District Court to characterize her explanations as lies.

### 7. **"Josh"**

The District Court directed that your undersigned turn over information related to the person who was able to retrieve the penis picture from her phone. Contrary to the District Court's assessment, it was not Amtrak's "independent investigation that led to Josh." Ms. Vanceah testified about Josh at her deposition. A-864 Your undersigned traveled to the New Jersey location for the electronics sort and after several inquiries your undersigned found the person Ms. Vanceah referred to as Josh. Your undersigned spoke with him to confirm that he worked in the electronics store and whether he remembered Ms. Vanceah. After confirming he was the right person, as directed, your undersigned provided Josh's cell number to Amtrak and Mr. Dendy's counsel. A-851 – A-857.

Josh's testimony conflicted with Ms. Vanceah's testimony. He was intimidated and threatened by Amtrak and Mr. Dendy's counsel and told by them

that he was in trouble. A-858 – A-860, A-862 – A-864. It is little wonder that he would not say anything in support of Ms. Vanceah.

Ms. Vanceah in no way attempted to divert attention from the relevant issues, by stating that Amtrak was painting her as a sexualized liar and treating her like a rape victim. Amtrak's efforts to discredit Ms. Vanceah read like a grade-B movie: she and Mr. Dendy were in a mutual sexual and romantic relationship, he ended the relationship, she would not take no for an answer, so she falsely claimed that the picture of the penis was unwanted and unsolicited, to get back at him for the breakup. She then filed a false claim against him with Amtrak.

Ms. Vanceah has violated no court orders. When she was ordered to provide affidavits, she complied. When she was ordered to produce her phones for forensics, she complied. When she was ordered to pay for the forensics, she complied. When she was ordered to provide information, she complied. She has not refused anything. The District Court has incorrectly made the huge assumption that Ms. Vanceah "likely destroyed relevant documents, lied about her cell phones, lied about the forensic examination she purportedly conducted on her phone, and baselessly accused her adversaries of racism and sexism." The District Court has incorrectly determined that Ms. Vanceah is a liar and made the further assumption that based on the lies, Amtrak is unable to fully understand the facts that underlie her claims.

Amtrak is well aware of what the facts are and what the claims are: Mr. Dendy used his position as a union boss to have a sexual relationship with Ms. Vanceah in exchange for assigning her overtime.

Ms. Vanceah received no warning about the consequences of the alleged noncompliance, and therefore dismissal with prejudice was unwarranted.

## 8. **Inherent Powers**

The District Court abused its discretion in dismissing Ms. Vanceah's case with prejudice. There must be "clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). The imposition of sanctions pursuant to a court's inherent authority is truly discretionary. *See Murray v. City of Columbus,* 534 F. App'x 479, 485 (6th Cir. 2013) ("Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred."). Finally, the Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 44 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991)) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."), *quoted in Yukos.*

42

In *Yukos* this Court held that "[i]n the discovery context, that discretion should be exercised with even more restraint than usual. Rules 26(g) and 37 "represent the principal enforcement *236 power to punish discovery abuse." Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* 535, 558-59 (6th ed. 2020) (*quoting Chambers*, 501 U.S. at 46, 111 S. Ct. 2123). "Inherent power sanctions are thus not a primary mechanism by which a party can obtain relief for a discovery abuse: They should serve only as a useful backstop against discovery abuses that do not clearly violate Rules 26(g) and 37." *Yukos, supra.*

Ms. Vanceah's affidavits cannot be seen as the same as referred to *In re Anderson*, No. 14-22147 (RDD), 2022 WL 1926608 at *2 (Bankr. S.D.N.Y. June 3, 2022) which was cited by the District Court. In *Anderson*, plaintiff's counsel knew the falsity of the affidavits filed by Credit One Bank and counsel kept that falsity from the court and opposing counsel. Here, there is no such conduct. Ms. Vanceah's affidavits concerned a business phone versus a personal phone. Since she used the phones interchangeably, there was no deliberate effort on her part to confuse or mislead anyone.

The central issue is not whether Mr. Dendy sent a picture of his penis "as part of a consensual personal relationship between her and Mr. Dendy," for nowhere is it permitted that one can send a picture of one's anatomy via text. The central issue is whether Mr. Dendy was using his position as a union boss to force

Ms. Vanceah to continue a sexual relationship with him in exchange for assigning her overtime.

The case of *Shepherd v. Annucci,* 921 F. 3d 89 (2d Cir. 2019) is inapposite to the facts at bar, because *Shepherd*, the *pro se* litigant was an inmate whose litigation history consisted of the omission of three lawsuits in which he had received strikes. Ms. Vanceah has made no such omission. Furthermore, Ms. Vanceah has not fabricated text messages, which the District Court intimated she has as the plaintiff in  *Rossbach v, Montefiore Medical Center*, No. 19 Civ. 5758 (DLC), 2021 WL 3421569 at *1-*3 (S.D.N.Y. Aug. 5, 2021) had done.

The District Court erroneously found that Ms. Vanceah engaged in discovery violations and abused its discretion in dismissing her case with prejudice.

## CONCLUSION

For the foregoing reasons, the District Court improperly dismissed

Appellant's Complaint. Its decision should be reversed.

Dated: December 6, 2022

                                         Respectfully submitted,

                                         /s/ René Myatt
                                         RENÉ MYATT
                                         204-04 Hillside Avenue, 2nd Floor'
                                         Hollis, New York 11423'
                                         (718) 468-3588
                                         myattlegal@gmail.com

                                         *Counsel for Plaintiff-Counter Defendant-Appellant*

## Certification of Compliance

Pursuant to Rule 32(a)(7)(B) of the Rules of Appellate Procedure, the foregoing brief has 14 point Times New Roman type, is double-spaced, has margins of at least one inch on all sides, and contains less than 14,000 words.

Dated: December 6, 2022

Isl _Rene Myatt_