# 22-1864-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

MARJAY VANCEAH,

*Plaintiff-Counter-Defendant-Appellant,*

– v. –

TIMOTHY DENDY,

*Defendant-Counter-Claimant-Appellee,*

NATIONAL RAILROAD PASSENGER CORPORATION, DBA AMTRAK,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR DEFENDANT-APPELLEE
## AND DEFENDANT-COUNTER-CLAIMANT-APPELLEE

---

LISA M. GRIFFITH
KELLY C. SPINA
LITTLER MENDELSON P.C.
*Attorneys for Defendant-Appellee*
290 Broadhollow Road, Suite 305
Melville, New York 11747
(631) 247-4700

VIKRANT PAWAR
VIK PAWAR LAW PLLC
*Attorneys for Defendant-Counter-
Claimant-Appellee*
20 Vesey Street, Suite 1410
New York, New York 10007
(212) 571-0805

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant and Appellee National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") hereby states, by and through its undersigned counsel of record, that National Railroad Passenger Corporation is a District of Columbia corporation that was authorized to be created by the Rail Passenger Services Act, 49 U.S.C. § 24101 *et seq.*

Amtrak has no parent corporation. It has two wholly-owned subsidiaries: Passenger Railroad Insurance Limited (PRIL) and Washington Terminal Company (WTC). The United States holds, through the U.S. Secretary of Transportation, 100% of Amtrak's preferred stock (109,396,994 shares at $100 par value). Amtrak's common stock (9,385,694 shares at $10 par value) is held by American Premier Underwriters, Inc. (55.8%; a wholly-owned, not publicly traded, subsidiary of American Financial Group, Inc., which is publicly traded), Burlington Northern and Santa Fe LLC (35.7%; BNSF LLC is a wholly-owned, not publicly traded, subsidiary of Berkshire Hathaway, which is publicly traded), Canadian Pacific Railway (6.3%), and Canadian National Railway (2.2%).

## **<u>TABLE OF CONTENTS</u>**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.....................................i

INTRODUCTION ..............................................................................1

COUNTER-STATEMENT OF THE ISSUES .........................................2

COUNTER-STATEMENT OF THE CASE ............................................2

COUNTER-STATEMENT OF THE STANDARD OF REVIEW .......................13

SUMMARY OF ARGUMENT ............................................................14

ARGUMENT ...................................................................................15

I.     PLAINTIFF'S BRIEF FAILS TO COMPLY WITH RULE 28, WHICH FORMS AN INDEPENDENT BASIS FOR DISMISSAL. ..........15

II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING ONLY DISMISSAL WOULD END DISCOVERY ABUSES. ...............................................................................17

     A.    The District Court Did Not Abuse Its Discretion In Determining That Plaintiff's Non-Compliance Was Willful. .................................19

     B.    There Was No Abuse of Discretion In Concluding That No Lesser Sanction Would Be Effective. ...................................25

     C.    The Duration of Plaintiff's Non-Compliance Provides Further Support for The Lower Court's Dismissal. .......................27

     D.    Plaintiff Was Warned of Consequences of Continued Failures.........29

CONCLUSION ................................................................................30

CERTIFICATE OF COMPLIANCE....................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Laboratories v. Adelphia Supply USA*,
  15-CV-05826 (CBA) (LB), 2020 WL 1429472 (E.D.N.Y. Mar. 24,
  2020) ...................................................................................................................17

*Abreu v. City of New York*,
  208 F.R.D. 526 (S.D.N.Y. 2002) ........................................................................20

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009) .........................................................................18, 22

*In re Anderson*,
  641 B.R. 1 (Bankr. S.D.N.Y. 2022) ....................................................................24

*Antonmarchi v. Consolidated Edison Co.*,
  No. 03-CV-7735 (LTS) (KNF), 2012 WL 928133 (S.D.N.Y. Mar.
  19, 2012) .............................................................................................................17

*Banjo v. U.S.*,
  No. 95-CV-633 (DLC), 1996 WL 426364 (S.D.N.Y. July 30,
  1996) ...................................................................................................................27

*Bhagwanani v. Brown*,
  665 F.App'x 41 (2d Cir. 2016) ...........................................................................27

*Binson v. Max Kahan, Inc.*,
  No. 12-CV-4871 (ER), 2014 WL 5089751 (S.D.N.Y. Sept. 30,
  2014) ...................................................................................................................23

*Carter v. Jablonksy*,
  121 F.App'x 888 (2d Cir. 2005) .........................................................................14

*Ceglia v. Zuckerberg*,
  600 F.App'x 34 (2d Cir. 2015) ...........................................................................13

*Dunbar v. Heinmiller*,
  830 F.App'x 367 (2d Cir. 2020) .........................................................................15

iii

*Embuscado v. DC Comics*,
347 F.App'x 700 (2d Cir. 2009) ........................................................27

*Friends of Animals, Inc. v. U.S. Surgical Corp.*,
131 F.3d 332 (2d Cir. 1997) ............................................................14

*Houghtaling v. Eaton*,
No. 22-CV-638, 2023 WL 113840 (2d Cir. Jan. 5, 2023)...........18, 19

*Juliao v. Charles Rutenberg Realty, Inc.*,
14-CV-0808 (JFB) (AYS), 2018 WL 4502172 (E.D.N.Y. Sept. 20,
2018) ...............................................................................................17

*Kleinman v. Elan Corp., PLC*,
706 F.3d 145 (2d Cir. 2013) ............................................................26

*LeChase Constr. Svcs. LLC v. Escobar Constr., Inc.*,
No. 21-CV-289, 2022 WL 363948 (2d Cir. Feb. 8, 2022) ................29

*Lee v. Katz*,
669 F.App'x 57 (2d Cir. 2016) .........................................................29

*Lewis v. Marlow*,
No. 17-CV-8101 (KMK), 2021 WL 2269553 (S.D.N.Y. June 3,
2021) ...............................................................................................17

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps.
Int's Union*,
212 F.R.D. 178 (S.D.N.Y. 2003) .....................................................24

*Miller v. Time-Warner Communications, Inc.*,
No. 97-CV-7286 (JSM), 1999 WL 739528 (Sept. 22, 1999) ............24

*Murray v. Mitsubishi Motors of N. America, Inc.*,
462 F.App'x 88 (2d Cir. 2012) ...........................................13, 15, 18

*Phelan v. Cambell*,
507 F.App'x 14 (2d Cir. 2013) .........................................................27

*Rossbach v. Montefiore Med. Ctr.*,
No. 19-CV-5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5,
2021) ...............................................................................................24

iv

*S. New England Tel. Co. v. Global NAPs Inc.*,
　　624 F.3d 123 (2d Cir. 2020) ...................................................13, 14, 18

*Schuster v. Charter Communications, Inc.*,
　　No. 18-CV-1826 (RJS), 2021 WL 1317370 (S.D.N.Y. Apr. 8,
　　2021) .........................................................................................17

*Shangold v. Walt Disney Co.*,
　　No. 03-CV-9522 (WHP), 2006 WL 71672 (S.D.N.Y. Jan. 12,
　　2006), *aff'd*, 275 F. App'x 72 (2d Cir. 2008) ....................................18

*Stone v. Goord*,
　　No. 07-CV-2826 (LTS) (THK), 2007 WL 3374583 (S.D.N.Y.
　　Nov. 14, 2007) ............................................................................22

*Weaver v. Chrysler Corp.*,
　　99 F.App'x 330 (2d Cir. 2004) .........................................................13

**Statutes**

28 U.S.C. § 1927 .........................................................................13, 30

Rail Passenger Services Act, 49 U.S.C. § 24101 *et seq.* ...........................i

**Other Authorities**

Fed. R. App. P. 28(a) ..................................................... i, 2, 15, 17

Fed. R. Civ. P. 11 ..........................................................................30

Fed. R. Civ. P. 16 ...................................................................5, 19, 29

Fed. R. Civ. P. 16(f) .......................................................................19

Fed. R. Civ. P. 26 ......................................................................19, 28

Fed. R. Civ. P. 26(a).......................................................................13

Fed. R. Civ. P. 26(b)(2)....................................................................21

Fed. R. Civ. P. 26(e).......................................................................19

Fed. R. Civ. P. 26(e)(1)....................................................................19

Fed. R. Civ. P. 26(f) ................................................................5

Fed. R. Civ. P. 37 ...........................................................*passim*

Fed. R. Civ. P. 37(c)(1) ...................................................*passim*

Local Rule 28.1 ...............................................................2, 4

Local Rule 37.2 ...................................................................7

## **INTRODUCTION**

The United States District Court for the Southern District of New York (Ramos, J.) (the "District Court") correctly dismissed Plaintiff-Appellant Marjay Vanceah's ("Plaintiff") sexual harassment action in its entirety for Plaintiff's repeated discovery abuses pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and/or the Court's inherent authority. Specifically, Plaintiff curated her document productions to withhold objectively consensual text messages with Defendant Timothy Dendy; destroyed key evidence; falsified two affidavits; and made contradictory representations under oath. Simultaneously, Plaintiff's counsel misrepresented to Defendants and the Court that Plaintiff was in full compliance with her obligations and was not withholding any responsive materials.

After many deficiency letters, court conferences, and multiple days of deposing Plaintiff, Defendants finally extracted admissions from Plaintiff, and a third-party vendor, which firmly established Plaintiff's extensive discovery misconduct. In a transparent attempt to conceal her misdeeds, Plaintiff claimed she could not produce key electronic evidence because she purposefully deleted it – not once, but twice – including while represented by counsel. Plaintiff's repeated, egregious conduct warranted the Court's imposition of dismissal sanctions and, therefore, this Court should affirm.

1

## COUNTER-STATEMENT OF THE ISSUES

1.   Whether the District Court erred in dismissing Plaintiff's claims with prejudice as a sanction for repeated discovery abuses, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and/or the Court's inherent authority?

2. Whether Plaintiff's appeal should be dismissed because her appellate brief fails to conform with Rule 28(a) of the Federal Rules of Appellate Procedure?

## COUNTER-STATEMENT OF THE CASE[1]

Amtrak hired Plaintiff as a coach cleaner in August 2017.  (A-13).  At the time, her co-worker, Defendant-Counter-Claimant-Appellee Timothy Dendy ("Dendy"), was a union chairperson at Amtrak.  (A-16).  In October 2017, Plaintiff and Dendy had a consensual sexual encounter.  (A-345).  Between September 2017 and February 2018, Plaintiff and Dendy exchanged hundreds of text messages of a personal nature, including messages from Plaintiff to Dendy saying: "Wassup mr. Vaca" (A-295), "I hear u single man" (A-302), "Gm baby" (A-332), "I'm alone so hurry up I want a hug" (A-337), "I'm bout to leave u gonna come give me a kiss and hug?" (A-341), "Way baby" (A-349), "How was your day" (A-352), "Morning baby" (A-360), "Awww baby" (A-373), "Hold on baby" (A-376), "I need

---

[1] Consistent with Plaintiff's obstructive and abusive discovery practices throughout the underlying litigation, Plaintiff's Statement of the Case is replete with false and unsubstantiated allegations without citation to the record, in woeful disregard of Federal Rule of Civil Procedure 28 and Local Rule 28.1.  Amtrak, therefore, submits this Counter-Statement of the Case to clarify the record.

underwear" (A-397), "Merry Christmas babes" (A-405), and "Did you order my fragrance?" (A-421) – all of which were suspiciously removed from Plaintiff's production to make it appear as though Dendy was pursuing a one-sided relationship. (A-197 – A-254). The pair's messages also contained provocative photos of Plaintiff and other women sent to Dendy and a photograph of Dendy's penis to Plaintiff. (A-329, A-359, A-361, A-362, A-365 – A-368, A-591 – A-592).

In February 2018, Plaintiff became upset over the union's distribution of overtime at Amtrak and, in response to the mistaken belief that Dendy influenced this scheduling, she threatened Dendy "U Wanna play? U not gonna like the ending results." (A-438 – A-440). For the first time, on February 20, 2018, immediately following her displeasure with the overtime issue, Plaintiff complained to Amtrak about Dendy's alleged harassment in sending the photo more than two months earlier and the sexual encounter that occurred four months prior. (A-18). Amtrak conducted a robust investigation, which included obtaining a statement from Plaintiff, meeting with Plaintiff and Dendy, and reviewing their text messages. (A-504 – A-509). Plaintiff provided 58 pages of text messages (approximately 600 messages) suggesting she was subjected to unwanted outreach by Dendy. (A-197 – A-254). Dendy then produced an additional 100 pages (approximately 900 messages) of consensual flirtatious messages exchanged over several months that

were glaringly omitted from Plaintiff's production.[2]  (A-292 – A-449).  Neither party produced a photo of Dendy's penis to Amtrak.[3]  (*Id.*).

On March 12, 2018, while the Human Resources investigation was underway, Plaintiff separately complained to the Amtrak Police Department regarding the same alleged conduct by Dendy.  (A-259).  The assigned officers sought to review the texts and photo at issue, but Plaintiff claimed she lost her phone and some messages were no longer available for that reason. (*Id.*)  Amtrak Police reviewed available messages and concluded the "allegation of harassment cannot be substantiated based on the information [Plaintiff] provided and what she stated" including Plaintiff's admission they "were intimate," Plaintiff requested underwear and perfume from Dendy and called him "babes," and other mutual banter.  (A-260 – A-261).  On or about July 18, 2018, Plaintiff filed an EEOC Charge against Amtrak alleging sexual harassment and retaliation.  (A-287).  On October 13, 2018, Plaintiff commenced this litigation alleging sex discrimination, sexual harassment, and retaliation against Amtrak and Dendy.  (A-13 – A-21).

---

[2] The content missing from Plaintiff's production is highlighted in yellow.  (*Id.*).

[3] Plaintiff's suggestion that she produced the picture in discovery in her appellate brief is made for the first time on appeal and contrary to all available record evidence, including Plaintiff's sworn deposition testimony.  (Pl. Br., p. 25, A-597 – A-600).

Throughout the discovery process, Plaintiff obstructed Amtrak's efforts to obtain material and necessary documents and information. Plaintiff's September 9, 2019 initial disclosures provided five pages of text messages (containing 31 messages) as the entirety of Plaintiff's documentary disclosures. (A-263 – A-273). Even worse, her November 23, 2019 responses to Amtrak's July 15, 2019 document requests, which were provided in response to Amtrak's first deficiency letter dated November 18, 2019, failed to produce more documents. (A-464 – A-478, A-481 – A-483). Instead, Plaintiff largely responded "Objection"; indicated she was "not in possession of any documents"; or stated she "previously produced" relevant documentation, even though she did not. (*Id.*).

Pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure, the Court held an initial conference and issued a Civil Case Discovery Plan and Scheduling Order on December 12, 2019. (Dkt. 20). At the conference, Amtrak's counsel noted Plaintiff owed discovery but, in light of her counsel's representation that the delay was due to her medical leave, the parties agreed to an extension. (A-61). Plaintiff then sought, and obtained, additional extensions due to COVID-19 without explaining how the pandemic impacted her discovery obligations. (*Id.*).

On April 30, 2020, Plaintiff finally attempted to remedy her deficiencies by submitting a supplemental response and, in doing so, swore she was not seeking emotional distress damages. (A-485 – A-486). The supplemental responses,

likewise, did not address the vast majority of other missing items – such as Plaintiff's use of cell phones to communicate with Dendy, subsequent employment or other earnings, calculation of damages, and evidence of her workplace complaints – which necessitated another deficiency letter.  (A-491 – A-495).

Oddly, in responding to the June 1, 2020 letter, Plaintiff provided new responses dated June 14, 2020 which, among other changes, sought $300,000 in emotional distress damages, but still failed to provide critical documents or information concerning the alleged workplace harassment or her complaints to Amtrak.  (A-497 – A-501).  Plaintiff also averred that "Den[d]y did not send any text when he sent the picture of his penis," which contradicted Plaintiff's prior representation that Dendy sent "a picture of his penis captioned 'stop acting like you don't miss this.'"  (A-506).  On June 23, 2020, Plaintiff's counsel separately emailed a PDF copy of a photo purporting to depict Dendy's penis, without any accompanying text message(s) or metadata to confirm the authenticity of the photograph.  (A-194, Par. 15).  Plaintiff noted that, as of June 14, 2020, she "ha[d] provided all of the texts, video, photos in this and previous responses" and could not provide additional text messages because her cell phone was "stolen from the job." (A-497, A-501).

On July 10, 2020, Amtrak's counsel again sought Plaintiff's documents related to her internal complaints, subsequent employment, other mitigation efforts,

and social media posts concerning the claims and/or damages. (A-511 – A-513). Amtrak also sought an inspection of Plaintiff's phones to locate relevant electronic discovery in light of her glaringly deficient text message productions. (A-513). Since Plaintiff also claimed a phone was stolen, Amtrak requested a police report or other record to reflect when that occurred. (A-511). Rather than provide any requested documents, or an adequate explanation for not doing so, Plaintiff instead replied that Amtrak's requests were a character assassination that somehow implied she was a "lazy irresponsible and immature woman." (A-515). Plaintiff also claimed the requests were further harassment against her and, for that, accused Amtrak of being insensitive to women of color. (A-515 – A-517).

On August 7, 2020, Amtrak sought judicial intervention for Plaintiff's discovery deficiencies. (A-61 – A-62). Pursuant to Federal Rule of Civil Procedure Rule 37 and Local Rule 37.2, District Judge Edgardo Ramos held the first discovery dispute conference on September 18, 2020. (A-61 – A-62, A-64 – A-82). During the conference, Judge Ramos questioned Plaintiff's counsel about the extent of the text messages provided by Plaintiff to which counsel represented: (1) Plaintiff provided her counsel with the totality of the text messages exchanged between Plaintiff and co-Defendant Dendy; (2) all of these messages were then produced to Defendants in discovery; and (3) Plaintiff never used her second/business phone to

exchange messages with Dendy.[4]  (A-72 – A-75).   Judge Ramos denied Amtrak's request for an inspection of Plaintiff's phones, but ordered Plaintiff to produce outstanding discovery on mitigation and emotional distress and to submit an affidavit confirming Plaintiff had no other text messages.  (A-72 – A-73, A-80).

In response, Plaintiff produced two sworn affidavits, both dated September 30, 2020, which reflected, among other things, that "Plaintiff had two cell phones" ("business" and "personal" phones), but she "did not exchange any personal text messages with defendant Den[d]y on [her] business cell phone."  (A-87 – A-91). Plaintiff further represented that her sparse disclosures of text messages and one YouTube video, was the entirety of electronic discovery in her possession.  (A-91).

Shortly thereafter, on November 10, 2018, Plaintiff testified that she initiated text messages with Dendy from both of her cell phones, which directly contradicted the Court-ordered and sworn affidavits signed only weeks earlier as well as the representations made by counsel during the discovery conference.  (A-548 – A-550). At her continued deposition on November 18, 2020, Plaintiff testified she still had "more than hundred" [sic] text messages with Dendy on her phone and previously had more but "had to delete some stuff" after commencing her lawsuit in order to

_____

[4] In discussing Amtrak's request for documents on the theft of Plaintiff's cell phone, her counsel refuted Plaintiff's sworn statement that a cell phone was "stolen" and instead claimed it was "lost." (A-74, A-501, A-515).

free up memory space on her phone. (A-105 – A-106). Plaintiff also testified that she exchanged messages with Dendy on one of her cell phones and sent screenshots of those messages to her other phone. (*Id.*). Having reconsidered the proper scope of Amtrak's discovery requests, Plaintiff admitted her sworn representation of a good faith search and comprehensive production was inaccurate. (A-254). Plaintiff also admitted she sent Dendy a photo of bare female buttocks immediately before he sent an intimate picture. (A-591 – A-592).

By letter motion dated November 24, 2020, Amtrak sought another Rule 37 conference to compel a forensic inspection of Plaintiff's cell phones and for sanctions for Plaintiff's discovery obstructions and false affidavits. (A-83 – A-85). In response, Plaintiff's counsel said the "basis" of Plaintiff's case was an intimate photo allegedly sent by Dendy to Plaintiff, but continued to deny Plaintiff withheld messages or should be required to produce her phones. (A-112 – A-114).

The parties appeared before the Court on December 4, 2020 for the second time to address Plaintiff's discovery misrepresentations. (A-121 – A-134). During the conference, Plaintiff's counsel contradicted her client's deposition testimony by claiming Plaintiff did not delete electronic data and that the photo of the woman's buttocks Plaintiff sent to Dendy (immediately prior to the photo Dendy sent her) was only a "meme" and not a real photograph intended for Dendy. (A-126 – A-128). Plaintiff's counsel also suggested Plaintiff was only required to produce messages

she deemed relevant, without regard to additional messages she exchanged with Dendy or other Amtrak employees. (A-128 – A-129). As a result of Plaintiff's inexplicable and contradictory accounts, Judge Ramos ordered forensic inspections of both of Plaintiff's phones at her expense. (A-129 – A-133).

The forensic inspection involved a detailed review of the terms, dates, and names to search in Plaintiff's phones, which were agreed upon by counsel and processed by third-party vendor Consilio. (A-885 – A-896). The inspection revealed undeleted texts between Plaintiff and Dendy on at least 19 days that Plaintiff never produced in discovery – whether in response to Amtrak's document requests, deficiency letters, or Judge Ramos' multiple orders. (A-195, Par. 24).

At Plaintiff's continued deposition, she could not adequately explain her failure to preserve and produce all of her text messages internally to Amtrak or in the discovery process of her lawsuit. (A-587 – A-588, A-593). Plaintiff also testified that, while she previously denied exchanging text messages with any other Amtrak employees, she had in fact engaged in numerous messages with Amtrak employee Douglas Brown, including messages where she claimed she was pregnant with his baby and threatened to terminate the pregnancy, although she could not recall the messages or why exactly they were sent. (A-635 – A-637, A-641, A-662 – A-665). Plaintiff also claimed, for the first time, that Dendy actually sent two photos of his

anatomy, but she never raised the issue or tried to locate the second photo because she "felt like one picture is enough."  (A-614 – A-616).

Critically, Plaintiff explained she retrieved the one alleged photo during the pendency of her lawsuit (while represented by counsel) with the assistance of an "electronic store."  (A-595 – A-596).  Plaintiff claimed she provided "Josh" with a description of Dendy's anatomy and instructed him to locate the photo on her phone. (A-601 – A-602).  Plaintiff did not ask Josh to look for any text message accompanying this purported photo, nor did she ask him to look for any other messages or photos.  (A-608, A-611).  Plaintiff claimed she logged into her iCloud account and left the store, and Josh provided the picture days later.  (A-606 – A-608).  Plaintiff first said he provided a "hard copy", but later clarified that he sent the photo by text message.  (A-607, A-612).  If Plaintiff's testimony is credited, she purposefully deleted this message from Josh during the discovery phase of this lawsuit.  (A-612 – A-613).

Dendy denied that Plaintiff's photo depicted him.  (A-845).  This, and Plaintiff's admission that she deleted the only electronic version of the photo during this case (thereby preventing Amtrak from investigating crucial metadata), caused Amtrak to request a third Rule 37 conference.  (A-137 – A-138, A-612 – A-613, A-845).  On September 9, 2021, Judge Ramos expressed concern with Plaintiff's belated and incomplete explanation of the photo retrieval, and ordered Plaintiff to

11

provide "the location of the place and name of the person who extracted" it. (A-152 – A-153). Plaintiff's counsel located 1110A Clinton Avenue as the store to service Plaintiff's phone. (A-852 – A- 857). From this information, Amtrak counsel identified U R Wireless at 1100 Clinton Avenue as the vendor who actually serviced Plaintiff's phone by employee Josue Rondau. (A-773).

Rondau appeared for a deposition on October 25, 2021, at which he acknowledged personally unlocking and restoring Plaintiff's iPhone. (A-774). However, Rondau unequivocally denied ever accessing the contents of Plaintiff's phone, retrieving an image, texting her an image, printing an image, or otherwise providing services concerning the alleged Dendy photo. (A-773 – A-779). This patently refuted Plaintiff's sworn testimony that she obtained the photo by text message from Rondau after her lawyer instructed her to retrieve it. (A-595 – A-596, A-612). This final straw warranted Amtrak's application to move for dismissal sanctions that same day, which Judge Ramos granted. (A-158 – A-159).

On November 23, 2021, Amtrak moved for discovery sanctions, including dismissal of all claims with prejudice and fees and costs. (A-160 – A-780). On August 1, 2022, the District Court properly found that Plaintiff's "willful and bad faith noncompliance with the discovery process" warranted dismissal with prejudice. (SA-2 – SA-27). In doing so, Judge Ramos determined Plaintiff's discovery responses were "far too narrow and constantly changing"; Plaintiff was "untruthful

12

in her [Court-ordered] affidavits"; and "Plaintiff's failure to preserve the text messages Dendy sent, and her shifting explanations about her phones, her contradictory explanations of whether she deleted other communications, and her demonstrably false information about the forensic examination she had done on her phone, [were] sanctionable." (SA-8 – SA-9, SA-17). Moreover, Judge Ramos determined that in "two-and-a-half years, six discovery-related Court conferences and several letters, [Plaintiff] has refused to produce and likely destroyed relevant documents, lied about her cell phones, lied about the forensic examination she had purportedly conducted on her phone, and baselessly accused her adversaries of racism and sexism," thereby warranting dismissal with prejudice. (SA-22).

## COUNTER-STATEMENT OF THE STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(c)(1) permits the court to impose sanctions, including dismissal, for a party's failure to provide discovery as required by Rule 26(a) or (e). This Court reviews a district court's imposition of dismissal sanctions – whether by Rule 37, 28 U.S.C. § 1927, or inherent powers – for abuse of discretion. *Ceglia v. Zuckerberg*, 600 F.App'x 34, 37 (2d Cir. 2015) (inherent powers); *Murray v. Mitsubishi Motors of N. America, Inc.*, 462 F.App'x 88, 89 (2d Cir. 2012) (Rule 37); *Weaver v. Chrysler Corp.*, 99 F.App'x 330, 333 (2d Cir. 2004) (28 U.S.C. § 1927). This means "that [t]he question, of course, is not whether [the Second Circuit] would as an original matter have [applied the sanction]; it is whether

13

the District Court abused its discretion in so doing." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2020).

To make this determination, the Court is limited to "review[ing] a district court's factual findings supporting sanctions only for clear error." *Id. citing Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997); *see also Carter v. Jablonksy*, 121 F.App'x 888, 889 (2d Cir. 2005).

## <u>SUMMARY OF ARGUMENT</u>

The District Court properly dismissed Plaintiff's lawsuit after identifying her perjured affidavits, false representations concerning electronic discovery in written discovery responses and deposition testimony, and overall obfuscation of the discovery process. At every turn, Plaintiff and her counsel shifted positions on their theme of the case, scope of discovery, and basic explanations of what documents existed and when. Plaintiff provided differing and incomplete documents and explanations to Amtrak Human Resources and Amtrak Police Department, as well as in her federal court Complaint, written discovery responses, and sworn deposition testimony – and even does so again in her appellate brief.

As a result, Defendants incurred significant expenses in their repeated attempts to obtain plainly discoverable information for nearly two and a half years. On par with the proceedings below, Plaintiff's appeal offers new and unsubstantiated facts, such as claiming Plaintiff provided a copy of a photograph central to her sexual

harassment claim both internally to Amtrak and in her initial disclosures, neither of which occurred and are tellingly absent from the voluminous record. Plaintiff's revisionist history cannot be condoned in the face of the robust contradictory record. Moreover, such ongoing misrepresentations demonstrate that anything less than dismissal would not have been effective to bring such abuses to an end. District Judge Ramos properly determined that Plaintiff's discovery abuses warrant dismissal of this action in its entirety with prejudice. Since the lower court's decision was not an abuse of discretion, it should be affirmed.

## **ARGUMENT**

## I. PLAINTIFF'S BRIEF FAILS TO COMPLY WITH RULE 28, WHICH FORMS AN INDEPENDENT BASIS FOR DISMISSAL.

Rule 28 requires an appellant to provide the Court with, among other things, a statement of facts with citation to the record and a legal analysis of the appropriate standard of review. Fed. R. App. P. 28(a). The failure to follow these procedures provides an independent basis to dismiss the appeal. *Dunbar v. Heinmiller*, 830 F.App'x 367, 368 (2d Cir. 2020) (affirming dismissal and noting plaintiff waived any challenge to the district court order where his brief failed to address the requirements of Rule 28(a)); *Murray*, 462 F.App'x at 91 (dismissing case pursuant to Rule 37 but noting "there are severe problems with [the plaintiff's] brief, which, in themselves, would warrant dismissal of the appeal").

Plaintiff's brief is replete with false factual claims that, tellingly, have no citation to the record. For example, Plaintiff's brief boldly alleges "contrary to Mr. Dendy's testimony, the buttocks photo did not immediately precede the penis picture."[5] (Pl. Br., p. 23). However, Plaintiff and Dendy both testified that Plaintiff sent Dendy the bare buttocks photo immediately before he sent the picture of his penis. (A-591 – A-592, A-843). Plaintiff also alleges that, [a]fter that one [October 2018] sexual encounter, Ms. Vanceah wanted no further contact with Mr. Dendy" and "continued to rebuff [his advances]" (Pl. Br., p. 13) – however, their text messages reveal Plaintiff repeatedly initiated contact with Dendy in the following months and Plaintiff also admitted to regularly initiating and receiving phone calls with him. (A-345 – A-436, A-591).

Similarly, Plaintiff's brief alleges, without any support in the record, that "Ms. Vanceah has been adamant that she has not deleted any text messages from her phone during the litigation." (Pl. Br., p. 23). Once again, however, Plaintiff's own testimony confirmed she deleted the text message and photo she received from "Josh," the electronics vendor, during this litigation, even though it was the only electronic evidence of the crucial photo. (A-611 – A-613).

---

[5] Plaintiff's brief also continues to allege that the buttocks photo was a "meme," even though Plaintiff testified otherwise and it is plainly refuted by viewing the photo itself. (Pl. Br., p. 24 c.f. A-382, A-591 – A-592).

Such provably false and unattributed misrepresentations formed the very basis of the underlying motion for sanctions. Plaintiff failed to provide relevant discovery, lied about what happened and when, and now fails to point to record evidence supporting her contrary positions, all of which have unduly prejudiced Defendants and reveals a pattern of fraud upon the Court. By relying on an inflammatory and unwarranted narrative, rather than factual statements with citations to the record, Plaintiff has failed to comply with Rule 28, which forms an independent basis to dismiss the appeal and affirm the judgment below.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING ONLY DISMISSAL WOULD END DISCOVERY ABUSES.

Dismissal is the appropriate remedy "where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *Lewis v. Marlow*, No. 17-CV-8101 (KMK), 2021 WL 2269553, at *4 (S.D.N.Y. June 3, 2021); *see also Schuster v. Charter Communications, Inc.*, No. 18-CV-1826 (RJS), 2021 WL 1317370, at *6 (S.D.N.Y. Apr. 8, 2021) (dismissing claim with prejudice where the plaintiff failed to appear for a deposition and court conference, and provided inadequate explanations for same); *Abbott Laboratories v. Adelphia Supply USA*, 15-CV-05826 (CBA) (LB), 2020 WL 1429472 (E.D.N.Y. Mar. 24, 2020) (granting default judgment against defendants who withheld evidence, misrepresented the scope of record evidence, and submitted shifting explanations for their misconduct); *Juliao v. Charles Rutenberg Realty, Inc.*, 14-CV-0808 (JFB) (AYS), 2018 WL

4502172, at * (E.D.N.Y. Sept. 20, 2018) (dismissing *pro se* plaintiff's employment discrimination claims where he failed to provide basic discovery, which was prejudicial to the plaintiff and a waste of judicial resources); *Antonmarchi v. Consolidated Edison Co.*, No. 03-CV-7735 (LTS) (KNF), 2012 WL 928133 (S.D.N.Y. Mar. 19, 2012), at *3 (dismissing action with prejudice due to plaintiff's repeated failure to provide relevant discovery and related misrepresentations); *Shangold v. Walt Disney Co.*, No. 03-CV-9522 (WHP), 2006 WL 71672, at *5 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x 72 (2d Cir. 2008) (dismissing case and awarding fees and costs as sanctions for submitting fabricated evidence which constituted a fraud upon the court).

In evaluating sanctions under Rule 37(c)(1), a district court will consider: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co.*, 624 F.3d at144; *see also Murray*, 462 F.App'x at 89, *citing Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). "[T]hese factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for [the Second Circuit] to conclude that those sanctions were within the court's discretion." *Id*. at 144. Where a plaintiff does not meaningfully address the foregoing Rule 37 factors on appeal,

she has forfeited the issues on appeal and this Court is not obliged to independently review them. *Houghtaling v. Eaton*, No. 22-CV-638, 2023 WL 113840, at *1 (2d Cir. Jan. 5, 2023) (affirming dismissal of *pro se* plaintiff's Section 1983 claim pursuant to Rule 37 where, on appeal, he launched improper accusations against his adversary and the court instead of substantively addressing the four factors). On appeal, Plaintiff attempts to rewrite the factual and procedural history of this case, yet fails to adequately address the Rule 37 factors. Accordingly, in line with *Houghtaling*, this Court is not required to assess the Rule 37 factors but, even if it elects to do so, dismissal was clearly warranted.

## A.     The District Court Did Not Abuse Its Discretion In Determining That Plaintiff's Non-Compliance Was Willful.

Under Rule 26(e), parties are required to disclose relevant discovery, and to supplement or correct that discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…, or [] as ordered by the Court." Fed. R. Civ. P. 26(e)(1). Rule 16 further provides that the court may impose sanctions, including dismissal, where a party fails to obey an initial scheduling order. Fed. R. Civ. P. 16(f). Despite her Rules 16 and 26 obligations, and the Court's Scheduling Order, Plaintiff initially produced only five pages of text messages. (A-268 – A-273). Even when supplemented five months later, Plaintiff's sparse responses did not include the intentionally curated messages she previously disclosed to Amtrak (which were intended to make it appear as

though Dendy harassed her with unsolicited messages), and they certainly did not include the friendly messages Plaintiff sent to Dendy.  (A-280 – A-290).

"Under Rule 37, incomplete disclosures or responses are the equivalent of a total failure to disclose or respond." *Abreu v. City of New York*, 208 F.R.D. 526, 530 (S.D.N.Y. 2002).  In *Abreu,* which Plaintiff repeatedly cites in her brief, the court determined that the plaintiff's lack of reasonable justification for nearly two years of discovery failures necessitated dismissal because "it would not serve Rule 37's goal of deterrence to permit [plaintiff] to continue to maintain this action."

While Plaintiff's counsel stressed that this was a simple case about a single allegedly harassing photograph, Plaintiff took a year to provide the alleged photo and ultimately testified (over the course of four days) that she: (1) did not feel harassed by receiving the photo; (2) actually received two photos but decided not to take steps to locate the second photo; and (3) deleted the first photo during the pendency of this action, among other transgressions.  (A-112, A-593, A-612 – A-616).  Only after Amtrak raised the issue of the photo with the Court during three separate conferences, did Plaintiff's counsel finally admit to the Court that she and her client never discussed how and when Plaintiff obtained it.  (A-761).  And, as noted by Judge Ramos, Plaintiff broadly asserted she withheld discoverable

documents due to unsubstantiated privacy concerns of a "fishing expedition," but never once sought intervention to prevent alleged discovery abuses.[6]  (SA-19).

On September 18, 2020, the District Court attempted to remedy Plaintiff's initial discovery abuses by requiring her to produce a sworn affidavit confirming her search for, and production of, relevant electronic discovery.  (A-72 – A-73, A-80).  Plaintiff responded to the Court's directive by producing two sworn affidavits, both dated September 30, 2020, representing that a good faith search for electronic discovery was conducted and nothing further existed.  (A-87 – A-91).  Yet, only a few weeks later at her November 2020 depositions, Plaintiff admitted these representations, and thus her alleged compliance with the Court's Order, was false.  (A-539 – A-540, A-542 – A-543).  Plaintiff's affidavit also described her devices as "personal" and "business" phones with no messages exchanged with Dendy on the "business" phone, but Plaintiff denied such distinctions at her deposition and readily admitted to texting with Dendy on both phones.   (A-549 – A-550).

On appeal, Plaintiff now attributes this depiction to the "unfortunate" thinking that "the only phone at issue would be the phone where Mr. Dendy sent the penis

---

[6] At the third Rule 37 conference, Judge Ramos reminded Plaintiff's counsel that, the way to have addressed such privacy concerns "is for there to have been a full and complete production of the requested relevant documents" in the first place.  (A-132).  Plaintiff's brief alternatively suggests she may have withheld text messages because she was only asked for "*documents*" (Pl. Br., p. 18, emphasis in original), which ignores that "electronically stored information" is a critical part of the definition of "document."  Fed. R. Civ. P. 26(b)(2).

picture" – regardless of the consensual, provocative exchanges that were ultimately shown to have taken place on the second phone – and claims "the description of personal and business is more fluid and less literal." (Pl. Br., pp. 19, 22). Plaintiff's appeal completely ignores the perjured affidavits to claim "there was no contradiction between speaking with Mr. Dendy on both phones, if both phones are used interchangeably, particularly if a battery should die on one, then the other cell phone would be utilized." (Pl. Br., p. 22).

Having no adequate explanation for her egregious transgressions, Plaintiff now suggests she should be held to a lesser standard because she was a naïve 29-year-old Black woman and "Amtrak was having fun with this unsophisticated young woman" in seeking material discovery.[7] (Pl. Br., pp. 10, 22). While there is no lawful basis for such a lower standard, it is notable that even *pro se* plaintiffs lacking the benefit of counsel have had claims dismissed under Rule 37. *See*, *e.g.*, *Agiwal*, 555 F.3d at 302 (2d Cir. 2009) (dismissing employment claims for discovery delays and inadequacies that *pro se* plaintiff attributed to illness); *Stone v. Goord*, No. 07-CV-2826 (LTS) (THK), 2007 WL 3374583, at *2 (S.D.N.Y. Nov. 14, 2007)

_____

[7] Plaintiff also accuses Dendy of being a "classic abuser" after their admittedly consensual sexual encounter because of an alleged "power dynamic," even though they were co-workers and he held no supervisory authority over her, nor is there any allegation that he abused her. (Pl. Br., p. 25, A-850). Such inflammatory claims are similar to the allegations in Plaintiff's opposition to Amtrak's underlying motion, in which Plaintiff's counsel claimed Amtrak treated Plaintiff like a "sexualized liar" and employed "rape victim" tactics. (A-789, A-806).

(dismissing *pro se* plaintiff's civil rights claims after non-compliance with discovery for six months).

Judge Ramos accurately found that Plaintiff provided contradictory explanations of her text messages, including which devices were used, what happened to the devices, when content was deleted, and whether she conducted an exhaustive search to produce all relevant discovery. (SA-9). In destroying evidence while the action was pending and represented by counsel, Plaintiff knew (or should have known) to preserve relevant evidence. Such destruction was a plainly willful attempt to hide that she did not obtain the photo as she claimed. *See Binson v. Max Kahan, Inc.*, No. 12-CV-4871 (ER), 2014 WL 5089751, at *6 (S.D.N.Y. Sept. 30, 2014) (bad faith destruction "is sufficient circumstantial evidence … that the missing evidence was unfavorable to the party against whom sanctions are sought.").

Whereas Plaintiff alleged she received the photo in a text message from "Josh" (Josue Rondau) who worked at the electronics store, Rondau emphatically denied doing so when questioned at his deposition. (A-774 – A-779). Indeed, Rondau testified that it would have been against his employer's policies to view the contents of a customer's phone and he likewise would not have sent data via text message. (*Id.*). Plaintiff's brief now outrageously claims, without any factual support whatsoever, that defense counsel intimidated Rondau into providing false sworn testimony in favor of Amtrak and Dendy. (Pl. Br., p. 27).

23

In the course of more than two years, Defendants have endured three deficiency letters, three Rule 37 conferences before Judge Ramos, two false affidavits, four days of Plaintiff's contradictory deposition testimony, a forensic inspection of Plaintiff's phones, a deposition of Plaintiff's forensic vendor – and even accusations of racism, sexism, and witness intimidation – which culminated in the sanctions motion at issue here, solely because of Plaintiff's repeated misconduct and deception.  To date, Plaintiff offers no plausible explanation for withholding relevant discovery, submitting perjured affidavits, or presenting patently false accounts of how she obtained the one PDF photo belatedly produced in discovery.

These facts demonstrate that Plaintiff's actions were willful and egregious, and favor affirming dismissal.  *See*, *e.g.*, *In re Anderson*, 641 B.R. 1, 14 (Bankr. S.D.N.Y. 2022) (submission of false affidavits and repeated misrepresentations to the court constituted "willful discovery failures"); *Rossbach v. Montefiore Med. Ctr.*, No. 19-CV-5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) (dismissing sexual harassment claims with prejudice for fabricated text messages); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int's Union*, 212 F.R.D. 178, 181-182, 206, 223-24 (S.D.N.Y. 2003); *Miller v. Time-Warner Communications, Inc.*, No. 97-CV-7286 (JSM), 1999 WL 739528 (Sept. 22, 1999) (finding plaintiff acted willfully and in bad faith in deleting evidence and then lying about her conduct).

24

**B.      There Was No Abuse of Discretion In Concluding That No Lesser Sanction Would Be Effective.**

Judge Ramos personally oversaw Plaintiff's repeated discovery transgressions during three Rule 37 conferences, first denying Amtrak's application to inspect Plaintiff's phones in favor of an affidavit attesting to her good faith production of responsive discovery (A-70 – A-79); next ordering a forensic inspection of the phones (A-129 – A-133) at the parties' second Rule 37 conference; and, finally, ordering Plaintiff to identify the location and name of the vendor she used to retrieve the photo during the third Rule 37 conference.  (A-152 – A-154). The testimony of Plaintiff's vendor, Josue Rondau, was the proverbial icing on the cake in that he irrefutably denied searching for a photo of Dendy's anatomy on Plaintiff's device or cloud server, much less retrieving it and sending it by text message to Plaintiff.  (A-774 – A-779).  The record makes clear that Judge Ramos patiently attempted lesser remedies and sanctions, to no avail.

Moreover, Plaintiff's conduct to this day demonstrates that any sanction short of dismissal will not address her ongoing misconduct, but simply will allow it to continue.  For example, in her brief, Plaintiff claims any mistakes she made were the results of "naivete" on account of being an "African American woman who was twenty-nine" and "unsophisticated in her thinking and in her belief about her assessment of what was required to prove her case." (Pl. Br., p. 10).  This completely ignores that: (1) Plaintiff was represented by experienced counsel for her entire case;

(2) Amtrak's counsel spelled out Plaintiff's omissions in three deficiency letters; and

(3) Judge Ramos issued clear orders outlining Plaintiff's discovery obligations at an

initial conference and three Rule 37 conferences during which Plaintiff's counsel

could have raised any questions with the Court. (A-1 – A-12, A-481 – A-483, A-

491 – A-495, A-511 – A-513, A-64 – A-82, A-121 – A-134, A-142 – A-157). Such

outrageous excuses are not only offensive, but demonstrate that any sanction less

than dismissal would permit Plaintiff to continue her scheme of lies and excuses of

not knowing any better.

Plaintiff's brief also claims, for the first time, that she mailed the photo of

Dendy to Amtrak's counsel in September 2019, and that she retrieved the photo to

produce it to Amtrak during her employment (Pl. Br., pp. 20, 25). These allegations

are directly undermined by Plaintiff's own deposition testimony, document

production to Amtrak, and discovery production in this case. (A-597 – A-600, A-

197 – A-254, A-263 – A-274). As an initial matter, these supposed new facts were

not presented to the District Court and thus should not be considered by this Court.

*See, e.g., Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 153 (2d Cir. 2013) (new facts

may not be asserted for the first time in an appeal brief). Further, such a glaring

contradiction to the well-established history of this case only further evidences

Plaintiff's consistent and continuing refusal to accept responsibility for her discovery

abuses and makes even more apparent that no lesser sanction could have brought

them to an end. *Bhagwanani v. Brown*, 665 F.App'x 41, 43 (2d Cir. 2016) (affirming Rule 37 dismissal because no lesser sanction would suffice where the plaintiff repeatedly failed to produce relevant discovery, feigned objections as to ambiguity of the requests, and provided "boilerplate conclusory" assertions of conducting a good-faith search for responsive documents).

If this case were permitted to continue, there is no doubt Plaintiff would continue the pattern of willful discovery abuses, which would prevent Amtrak from meaningfully defending against her claims. Accordingly, Judge Ramos did not abuse his discretion in finding dismissal was warranted. (SA-21 – SA-23).

## C. The Duration of Plaintiff's Non-Compliance Provides Further Support for The Lower Court's Dismissal.

Plaintiff's incomplete, evasive, contradictory, and perjured discovery spanned more than two years. Therefore, this factor also leans heavily in favor of dismissal. *See Phelan v. Cambell*, 507 F.App'x 14, 16 (2d Cir. 2013) (affirming dismissal after plaintiff failed to comply with written discovery and deposition obligations for seven months); *Embuscado v. DC Comics*, 347 F.App'x 700, 701 (2d Cir. 2009) (finding discovery noncompliance spanning only three months sufficient to warrant dismissal); *Banjo v. U.S.*, No. 95-CV-633 (DLC), 1996 WL 426364, at *6 (S.D.N.Y. July 30, 1996) (discovery delays of three months constituted an extensive and willful disregard of discovery deadlines so as to warrant dismissal under Rule 37).

27

To this day, Plaintiff has not adequately responded to Amtrak's initial requests and her basic initial disclosure obligations under Federal Rule of Civil Procedure 26. Instead, she has provided varying versions of text messages she exchanged with Dendy, including 58 curated pages to Amtrak Human Resources, different messages to Amtrak Police Department, and only five pages and one belated, questionable photo during written discovery. (A-197 – A-254). While repeatedly representing she produced all available discovery, Amtrak's persistence consistently garnered new information, including learning from a forensic inspection that Plaintiff failed to produce weeks of text messages exchanged with her alleged harasser during the period of alleged harassment. (A-195).

After two years of discovery, Plaintiff, claimed for the first time during her deposition that Dendy sent her two photos but she never bothered to locate the second photo because she "felt like one picture is enough." (A-614 – A-616). She also never attempted to locate the text message content that was sent or received with the purported photograph. (A-611). Plaintiff outrageously claims this is because "[s]he could not have known" she was required to provide anything more than a few self-selected messages. (Pl. Br., p. 16). Having failed to address fundamental discovery for more than two years, Plaintiff should not be permitted to continue her shifting explanations, factual assertions, and legal theories to the

significant prejudice of Defendants. There was thus no abuse of discretion in Judge Ramos determining this significant duration of misconduct favored dismissal.

**D.     Plaintiff Was Warned of Consequences of Continued Failures.**

A District Court need not explicitly warn a plaintiff that their case faces dismissal in order to take such action pursuant to Rule 37. *Lee v. Katz*, 669 F.App'x 57 (2d Cir. 2016) (affirming dismissal of *pro se* plaintiff's action with prejudice where she did not comply with discovery for 15 months, gave "unsupported" explanations for discovery failures, and her willfulness reflected she was "unpersuadable," regardless of any explicit warnings of dismissal); *LeChase Constr. Svcs. LLC v. Escobar Constr., Inc.*, No. 21-CV-289, 2022 WL 363948, at *1 (2d Cir. Feb. 8, 2022) (affirming default judgment where defendant alleged lack of prior warning because two prior discovery orders cited a failure to provide discovery and the default motion itself "warned that serious sanctions were imminent").

Here, Plaintiff and her counsel were well aware that their discovery misconduct could lead to dismissal. At the outset of the case, Judge Ramos issued a December 12, 2019 Order pursuant to Rule 16, which provides that the Court may issue sanctions, including dismissal, for a party's failure to provide ordered discovery. (Dkt. 20). On November 24, 2020, a year before this motion, Amtrak notified Plaintiff that "Defendants also reserve the right to seek further relief, including, but not limited to, spoliation sanctions, and are considering seeking

sanctions under Rule 11." (A-83, fn 1). Amtrak later sought permission to move for sanctions, including dismissal, in August 2021. (A-138). While that request was initially denied, defense counsel spoke with Plaintiff's counsel in October 2021 to discuss potential dismissal sanctions for Plaintiff's continued discovery abuses. (A-159). On October 25, 2021, Amtrak sought leave to move for such sanctions, which was granted the next day. (A-158 – A-159, Dkt. No. 60). Under these circumstances, Judge Ramos properly determined Plaintiff was on notice of the potential for dismissal sanctions for her repeated misconduct. (SA-21).

For all of the foregoing reasons, it is clear Judge Ramos did not abuse his discretion in dismissing Plaintiff's case with prejudice. The length of delays, extent and materiality of misrepresentations to Defendants and the Court, ineffectiveness of prior lesser sanctions, and repeated warnings of potential dismissal for continued discovery transgressions warrant no other outcome.

## **CONCLUSION**

Accordingly, the District Court did not abuse its discretion in its August 1, 2022 Order granting Defendants-Appellees' motion to dismiss the Complaint pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and/or the Court's inherent authority, and that judgment should be affirmed.

Date: March 7, 2023
      Melville, New York

/s/ Kelly C. Spina

Lisa M. Griffith
Kelly C. Spina
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY  11747
631.247.4700 (telephone)
631.293.4526 (facsimile)
lgriffith@littler.com
kspina@littler.com

*Attorneys for Defendant-Appellee*
*National Railroad Passenger Corporation*
*d/b/a Amtrak*

/s/ Vikrant Pawar

Vikrant Pawar
VIK PAWAR LAW PLLC
20 Vesey Street, Suite 1410
New York, NY  10007
212.571.0805 (telephone)
212.571.0938 (facsimile)
vikr@pawarlaw.com

*Attorneys for Defendant-Appellee*
*Timothy Dendy*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), counsel for Defendant-Appellee National Railroad Passenger Corporation d/b/a Amtrak hereby certifies as follows:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,957 words, excluding the parts of the brief exempted by Fed. R. App. R. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced type-face using Microsoft Word 2010 in 14-point Times New Roman.

Date: March 7, 2023
Melville, New York

*/s/ Kelly C. Spina*

Lisa M. Griffith
Kelly C. Spina
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
631.247.4700 (telephone)
631.293.4526 (facsimile)
lgriffith@littler.com
kspina@littler.com

*Attorneys for Defendant-Appellee*
*National Railroad Passenger Corporation*
*d/b/a Amtrak*