# 22-1864

In the

# United States Court of Appeals

## For the Second Circuit

MARJAY VANCEAH,

*Plaintiff-Counter-Defendant-Appellant,*

- v -

TIMOTHY DENTY,

*Defendant-Counter-Claimant-Appellee,*

NATIONAL RAILROAD PASSENGER CORPORATION,
d/b/a AMTRACK,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

**RENE MYATT**
*Attorney for the Plaintiff-Counter-Defendant-Appellant*
204-04 Hillside Avenue, 2nd Floor
Hollis, New York 11423
(718) 468-3588
myattlegal@gmail.com

(10036)

# Table of Contents

TABLE OF AUTHORITIES………………………………………. 3

INTRODUCTION…………………..…………………………………… 6

ARGUMENT………………………………………………………….. 9

    I.    PLAINTIFF'S BRIEF COMPLIES WITH RULE 28 AND DOES NOT FORM AN INDEPENDENT BASIS FOR DISMISSAL…9

    II.    DISMISSAL WAS NOT THE ONLY WAY TO ADDRESS ALLEGED DISCOVERY ABUSES, A LESSER SANCTION WAS AVAILABLE………………………………………………13

        A. Appellant's Noncompliance Was Not Willful…………….. 13

        B. The Efficacy of Lesser Sanctions…………………………. 20

        C. Duration of Noncompliance Did Not Prejudice Appellees…..24

        D. The District Court Failed to Give An Explicit Warning……..25

CONCLUSION……………………………………………………… 26

# Table of Authorities

## Cases

*Agiwal v. Mid Island Mortg. Corp.* ………………………………  10
555 F.3d 298, 302 (2d Cir.2009)
(internal quotation marks and ellipsis omitted).

*Antonmarchi v. Consolidated Edison Co. of New York* ………….  16, 17
2012 WL 928133 (United States District Court, S.D. New York March 19, 2012)

*Capellupo v. FMC Corp.* ………………………………………………  21
*126 F.R.D. 545 (D.Minn.1989).*

*Dunbar v. Heinmiller* ………………………………………………..  9
830 Fed.Appx. 367 (2d Cir. December 7, 2020)

*Embuscado v. DC Comics* ………………………………………..  24
347 Fed.Appx. 700 (United States Court of Appeals, Second Circuit October 1, 2009) 2009 WL 3160990

*Experience Hendrix, L.L.C. v. Pitsicalis* ……………………………  20
2018 WL 6191039 (United States District Court, S.D. New York November 28, 2018)

*Faraci v. Hickey–Freeman Co.* ……………………………………….  18
607 F.2d 1025, 1028 (2d Cir.1979) (citation omitted)

*Farmer v. Hyde Your Eyes Optical, Inc.*…………………………….  19
No. 13-CV-6653, 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (citation, alterations, and quotation marks omitted)

*Fincher v. Depository Trust & Clearing Corp.* …………………….  23
604 F.3d 712, 725 (2d Cir.2010)

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC* …………………  20
No. 15-CV-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016)

*Gutierrez v. New York* ………………………………………………  23
2021 WL 681238 (United States District Court, E.D. New York February 22, 2021)

*Henry v. Morgan's Hotel Group, Inc.* ……………………………    20
2018 WL 502711 (United States District Court, S.D. New York January 22, 2018)

*Lee v. Katz* …………………………………………………...    25
669 Fed. Appx. 57 (Conn. October 07, 2016)

*Lewis v. Marlowe* ……………………………………………14, 15, 16, 19, 26
2021 WL 226955 (United States District Court, S.D. New York June 3, 2021)

*Mealus v. Nirvana Spring Water NY* ………………………………    25, 26
2015 WL 4546023 (N.D.N.Y. 2015)

*Moll v. Telesector Res. Grp., Inc.* …………………………………….    23
760 F.3d 198, 206 (2d Cir. 2014)

*Murray v. Mitsubishi Motors of North America, Inc.* ………………9, 10, 12, 14
462 Fed. Appx. 88 (2d Cir. February 17, 2012)

*Phelan v. Cambell* …………………………………………………    24
507 Fed. Appx. 14 (United States Court of Appeals, Second Circuit January 3, 2013)

*Shangold v. Walt Disney Co.* ………………………………………    18
275 Fed.Appx. 72  (United States Court of Appeals, Second Circuit. April 28, 2008)

*Shanghai Weiyi* …………………………………………………    19
2017 WL 2840279, at *12

*Turner v. Hudson Transit Lines, Inc.* ……………………………….    21, 22
142 F.R.D. 68 (United States District Court, S.D. New York September 27, 1991)

*Zervos v. Verizon N.Y., Inc.* …………………………………………    10
252 F.3d 163, 169 (2d Cir.2001) (footnote omitted).

**Statutes**

FRAP Rule 28 …………………………………………………………    9

Rule 37 …………………………………………………………………..    10

## **INTRODUCTION**

Marjay Vanceah was a 29-year-old African American coach cleaner for Amtrak when she met Timothy Denty. Approximately fifty-year-old Timothy Denty was the Chair of the Union when he saw Ms. Vanceah at Amtrak's orientation meeting. Ms. Vanceah had asked Mr. Denty about union dues and he told her to take his number as he was in a rush and for her to reach out to him. He told her to make sure she text him so he would know who she was.

As Union Chair, Mr. Denty was involved in meting out overtime. He arranged for Ms. Vanceah to work overtime in spite of the policy that those on probation were not permitted overtime.

The parties exchanged text messages between them. The district court erroneously found that the exchanges were sexual banter. After several months, Mr. Denty appeared unwanted at Ms. Vanceah's Pennsylvania home late one night. She reluctantly allowed Mr. Denty to stay the night rather than return to New York that same night. She had him stay in a spare room, which belonged to her teenage daughter who was not home, and that had no cable T.V. During the course of the night, Mr. Denty appeared in Ms. Vanceah's bedroom under the pretense that he wanted to watch television. She fell asleep and was awakened by Mr. Denty's sexual advances. She acquiesced and they had sex, which was the first and last time.

6

Mr. Denty pursued Ms. Vanceah for continuation of their previous sexual encounter and she rejected his pursuit. Mr. Denty caused the overtime Ms. Vanceah was receiving to abruptly cease. He claimed that other workers were seeking overtime. Mr. Denty continued sexually pursuing Ms. Vanceah, finally texting her a picture of his erect penis.[1] Ms. Vanceah was outraged. She waited until she passed probation and then reported the incident to Amtrak's EEO officer.

Ms. Vanceah reasonably claimed that she was the victim of retaliation orchestrated by Mr. Denty. Ms. Vanceah was subsequently terminated by Amtrak. It is undisputed that Amtrak was aware of Ms. Vanceah's complaint against Mr. Denty. Ms. Vanceah's claim against Amtrak is that it did nothing to address her complaint apart from telling the parties to stay away from each other.

Ms. Vanceah reasonably believed that the law should require Amtrak and Mr. Denty to be held accountable for his use of sexual demands in exchange for overtime. Amtrak insisted on trying to punish Ms. Vanceah because she advocated holding Amtrak responsible for Mr. Denty's actions.

Amtrak and Mr. Denty pursued a sanctions motion for alleged noncompliance with discovery. The district court found there were discovery violations and held in the aggregate that the violations showed Ms. Vanceah's

---

[1] Mr. Denty admitted to sending a picture of his penis to Ms. Vanceah. He denied that the picture she produced was a picture of his penis. (A-843, A-845).

willful, and bad faith noncompliance with the discovery process, and warranted dismissal with prejudice.

Appellant's opening brief demonstrates that the district court's sanction was unwarranted, both legally and factually. Amtrak's and Mr. Denty's joint response maintain that the district court was correct to dismiss Ms. Vanceah's claims. However, their argument ignores the record evidence that shows Ms. Vanceah's noncompliance was not willful or in bad faith and that there was a lesser sanction available to the district court.

## **ARGUMENT**

## I.   **PLAINTIFF'S BRIEF COMPLIES WITH RULE 28 AND DOES NOT FORM AN INDEPENDENT BASIS FOR DISMISSAL**

The appellant's brief conforms to FRAP Rule 28. While not specifically delineated, the appellant's brief sets forth her arguments and challenges to the district court's ruling.

Appellees cite *Dunbar v. Heinmiller,* 830 Fed.Appx. 367 (2d Cir. December 7, 2020), a case distinguishable on its facts from the case at the bar, for the proposition that appellant's appeal should be dismissed. *Dunbar* involved a *pro se* litigant who did not address the district court's reasons for dismissal. In the case at bar, appellant discussed each of the issues the district court raised which resulted in the dismissal, and why the case should not have been dismissed.

In *Murray v. Mitsubishi Motors of North America, Inc*. 462 Fed. Appx. 88 (2d Cir. February 17, 2012), a case also cited by the appellees, the plaintiff-consumer brought a products liability action against motor vehicle and tire manufacturer to recover damages for injuries she sustained in a one-vehicle accident. The *Murray* decision discussed the circumstances under which a district court exceeds its discretion in imposing sanctions: "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly

erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions*." Citing, Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 *(*2d Cir.2001) (footnote omitted).

Here, there was clearly erroneous factual findings based on a review of the record. The court in *Murray* articulated that "[s]everal factors may be useful in evaluating a district court's exercise of discretion to dismiss an action under Rule 37. These include: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance," *citing  Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir.2009) (internal quotation marks and ellipsis omitted).

In the case at bar, there was no willfulness on the part of the appellant. There may have been ignorance or naiveness, but no willfulness, as the appellant sought to comply with discovery. Appellant produced discovery responses, documents, albeit incomplete. There were lesser sanctions that would have had the efficacy needed. The sanction, for example, of adverse inference or preclusion could have been utilized to penalize appellant given the extent of the noncompliance. Contrary to the appellees' view, it was not two years of

noncompliance. The case was filed in 2019. The appellant actively participated in discovery even throughout the pandemic. The appellant responded to appellees' requests with initial disclosures and supplemental responses (A-87-91, A-263, A-275, A-463A-484), which the appellee Amtrak argued was deficient on three occasions. However, appellant maintained that Amtrak had all of the text messages between she and Mr. Denty because she gave Amtrak's EEO officer Shazrea Mian "all." (A-569). Appellee has misconstrued the record to note that appellant says she produced the texts that "bothered her the most." In fact, what appellant was asked was,

> Q. "Why didn't you produce to your attorney all the emails between you and Shazrea?"

> A. "I produced to her the ones that bother me the most." (A-573).

Appellant also sat for depositions on four separate occasions beginning in November 2020. Moreover, discovery continued through April 2021 with the depositions of Amtrak's employees, Mr. Denty, and a non-party witness, Josue Rondau.

The district court abused its discretion when it found that appellant had been warned of the consequences of noncompliance. The district court's "warning," as the appellees argue, was that appellant was in violation of the district court's

11

"December 12, 2019 Civil Case Discovery Plan." This alleged warning was not a specific order directing the appellant to provide something that she did not. Appellees reached back to the Civil Case Discovery Plan to support their argument that appellant violated an order because they are aware that no such specific order existed. There were never any clear-cut warnings from the district court about dismissal.

Contrary to appellees' reliance on *Murray, supra*, appellant's brief does not "border on the incomprehensible." Moreover, contrary to where the litigant in *Murray* "did not cite a single case to support any of her arguments," such is not the case at bar. Appellant cited authorities to support her argument.

Finally, turning to appellees' argument that appellant has made false claims that "have not citation in the record," when in fact, appellant's claims are cited in the record. For example, the appellant wanted nothing to do with Mr. Denty and she said so in a text to him. (A-447). She goes on further to state in a text, "[f]rom now on have ur other reps call or text me if anything please do not contact me." (A-447).

## II.  DISMISSAL WAS NOT THE ONLY WAY TO ADDRESS ALLEGED DISCOVERY ABUSES, A LESSER SANCTION WAS AVAILABLE

### A. Appellant's Noncompliance Was Not Willful

Appellees argue that dismissal was the only way to address discovery abuses. Appellees further argue that appellant is looking for a "lesser standard because she is a naïve 29-year-old Black woman." (Def. Br. P. 22). It is interesting that appellees would interpret appellant as seeking a lesser standard because of her age and race. Appellant was referring to the obvious nature of being an unsophisticated layperson questioned by lawyers at her deposition. Appellant was not and is not seeking a lesser standard. Appellant was looking to explain why her understanding of what was required of her via discovery and what she was interpreting should have been considered. Appellant's deletion of the penis photo was not, as the appellees want this court to believe, her willful attempt to hide "that she did not obtain the photo as she claimed." (Def. Br. 23). Appellant "delete[d] some stuff after she sent it out because it's in the email with Shazrea Mian." (A-571). Appellant stated she did not delete any emails. She did delete pictures off her phone. (A-572). Appellant explained her ignorance to the process, ". . . you talking about Shazrea because you have access to that as well because she has it. . . I was just focused on it had to do with Dendy [*sic*] because I don't  - - . . . So I guess this

is my first time going through this so all the process is new to me . . .please, be more specific with me so I can know what to send you if I have it." (A-573).

The assertion by appellees that appellant has made "now outrageous claims, without any factual support whatsoever, that defense counsel intimidated Rondau into providing false sworn testimony in favor of Amtrak and Denty (Def. Br. 23)," belies the record. (A-860-864). Appellees' characterization of appellant's brief is inaccurate. What was stated in the brief was that there was little surprise that Mr. Rondau's testimony would contradict appellant's if, as he said, he felt intimated and threatened by the counsel for the defendants. He made this very clear during his deposition testimony. (A-860-A864).

As appellant's noncompliance was not willful, the district court could have dismissed the case without prejudice to allow the appellant to move to reopen if she filed the "overdue disclosure." *See Murray, supra.* (district court permitted Murray to reopen and file). (Emphasis added).

Appellees' reliance on *Lewis v. Marlowe,* 2021 WL 226955 (United States District Court, S.D. New York June 3, 2021), where a *pro se* plaintiff failed to appear for a deposition and court conference, and provided inadequate explanations for same, is distinguishable from the case at bar. The plaintiff's behavior in the *Lewis* case is the polar opposite of the appellant herein. There, the

plaintiff asserted that her rights were violated while she was committed to a psychiatric center. The court in *Lewis* found that the "litigant sent venomous and obscene letter to the court, left derogatory messages on the defendants' voicemail," and "told the court she did decline to comply with the Courts' previous orders." *Id.*

At the bar, the appellant expressed no such defiance. Appellant never once refused to comply or defy a court order. Appellant never left any messages, derogatory or otherwise on appellees' telephones. Whenever asked or directed, the appellant provided information. What was provided may have been incomplete, but again appellant was of the perhaps mistaken belief that Amtrak had "all, based on having sent it to Shazrea Mian before the litigation began." In *Lewis,* the plaintiff outright blatantly ignored the court order and defied the court's authority. Nothing remotely like what happened in *Lewis* happened here. Whatever the court directed, the appellant complied (e.g., providing affidavits, submitting cell phones for forensic analysis, finding the vendor who serviced her phone).

The appellees fervently state that what was directed to be produced was part of the reason for sanctions. However, a lesser sanction would have been a reasonably available option given there was no willfulness. For example, appellant provided two affidavits attesting to her two telephones, initially identifying one as business phone and one as personal. In her deposition the appellant tried to explain that she really does not see them as two phones, since if one dies she easily

transfers to the other phone. (A-561). Her testimony was not an indication of willfulness, or false testimony. If anything, it was a failure to understand that everything in law has a literal meaning, whereas a layperson may be more fluid in his or her interpretation and description.

If *Lewis* is examined in the context of willfulness, there was no willfulness on the part of the appellant. The court there, held that "the Court informed plaintiff that she was 'not relieve[d] [of] her obligation to provide discovery' in a Memo Endorsement entered on July 17, 2020. Ten days later, the Court warned Plaintiff that it was 'giv[ing] [her] one last chance to comply with the [Defendants'] discovery demands,' ordering her to comply with such demands by August 21, 2020, 'or face the possibility of certain sanctions, including dismissal.' " *Lewis v. Marlow,* No. 17-CV-8101 (KMK), 2021 WL 2269553, at *5 (S.D.N.Y. June 3, 2021). The plaintiff continued to "repeatedly express defiance and contempt toward those orders, conveying in unambiguous terms that she will not produce the requested medical records." *Id.* Here, the appellant was never brazen, never obscene, and never belligerent.

Other cases cited by appellees also do not characterize the appellant's noncompliance. In *Antonmarchi v. Consolidated Edison Co. of New York* 2012 WL 928133 (United States District Court, S.D. New York March 19, 2012) the plaintiff "testified, for instance, that when he saw one of the orders directing him to turn

16

over documents, he felt 'really didn't matter' and told his attorney, 'I'm not turning [the documents] over.'" In the same deposition, "Antonmarchi also denied telling the Court that he had pictures of Jenkins in Albany on November 22, 2002. When defense counsel directed Antonmarchi's attention to a copy of the court transcript indicating that Antonmarchi made just such a statement, Antonmarchi responded, 'I never said that. I never said that,' and '1 don't think the Judge said, I don't think she said there was going to be a transcript of that day.'" *See Antonmarchi v. Consol. Edison Co. of New York,* No. 03 CIV. 7735 LTS KNF, 2012 WL 928133, at *2 (S.D.N.Y. Mar. 19, 2012), *aff'd sub nom. Antonmarchi v. Consol. Edison Co. of New York*, 514 F. App'x 33 (2d Cir. 2013). Appellant herein never refused an order, and it is respectfully submitted that her actions were not tantamount to a refusal. "Antonmarchi willfully disobeyed two court orders to produce documents he held in his hand at a pretrial conference. Moreover, he has equivocated and contradicted himself regarding the contents of these documents, claiming in court that the documents contained evidence that Jenkins was in Albany, New York, on November 22, 2002, but later denying that he possessed such documents and even denying that he had claimed to possess such documents." *Id.* Appellant has never blithely refused a court order. Any contradictions seen in her testimony are not without explanation. The appellant was not allowed to fully explain any

contradictions on the record, as appellees did not wish to have anything explained to them and thus appellant was left with one giant gaping hole in her credibility.

In *Shangold v. Walt Disney Co.* 275 Fed.Appx. 72 (United States Court of Appeals, Second Circuit. April 28, 2008) "the defendants established, by clear and convincing evidence, that Shangold and Niederman submitted fraudulent evidence to the district court in order to bolster their claim of copyright infringement. The "T1a treatment" that Shangold and Niederman submitted to the district court, and claimed to have written in the spring of 1995, was shown to be fraudulent." The sanction was a dismissal with prejudice along with an award of attorney's fees. The attorney's fees award was reduced after reviewing the bank statements submitted by the plaintiffs. The court noted, that "fee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account." *Faraci v. Hickey–Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir.1979) (citation omitted).

In the instant case the district court did consider attorney's fees and felt they were not warranted either from the appellant because of her she has worked as a coach cleaner and a hairdresser.[2] The district court also denied the request to assess attorney's fees on appellant's counsel, as the district court recognized that

---

[2] The district court also noted that it ordered the plaintiff to pay the forensic analysis of her cell phones which amounted to approximately $16,000.00. (SA-26)

appellant's counsel  "nothing before [the Court] suggests that counsel engaged in anything other than zealous, if perhaps misguided advocacy." (SA-27).

When examining whether lesser sanctions are appropriate courts look to whether the noncompliance was deliberate or persistent, which may render lesser sanctions appropriate. *Farmer v. Hyde Your Eyes Optical, Inc.,* No. 13-CV-6653, 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (citation, alterations, and quotation marks omitted) *cited in Lewis, supra.* Although, appellant recognizes that "deliberate and persistent noncompliance may render lesser sanctions inappropriate, and a district court is not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record," *Id.* (citations and quotation marks omitted); *see also Shanghai Weiyi*, 2017 WL 2840279, at *12 (same), the district court should have considered a lesser sanction on the facts herein. Appellant's production was said to be incomplete by the appellee even though Amtrak was already in possession of text messages that were given to their EEO officer, Shazrea Mian, long before litigation began. Appellant was perhaps under the mistaken belief that having given everything to Shazrea meant having given it all to Amtrak.

**B. <u>The Efficacy of Lesser Sanctions</u>**

As has already been discussed and established above, any monetary sanctions would have been meaningless given the paucity of appellant's resources.

A lesser sanction could have been framed as an adverse inference or preclusion order. *Experience Hendrix, L.L.C. v. Pitsicalis* 2018 WL 6191039 (United States District Court, S.D. New York November 28, 2018) (the court found intentional spoliation and imposed lesser sanctions). The court in *Experience* held, it would "instruct the finder of fact that it may draw an adverse inference from the PHP parties' failure adequately to preserve and produce these materials, to wit, that the devices in question contained evidence of conduct by the PHP defendants in breach of their legal duties to plaintiffs in connection with the sale and marketing of Jimi Hendrix-related materials." Similarly, the district court could have imposed this lesser sanction of instructing the trier of fact that it may draw an adverse inference from appellant's failure to adequately preserve and produce text messages. *See also, First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,* No. 15-CV-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016) (imposing adverse inference instruction for intentional deletion of text messages and awarding plaintiffs' attorneys fees incurred in bringing sanctions motions)*, cited in Experience Hendrix, L.L.C. v. Pitsicalis,* No. 17 CIV. 1927 (PAE), 2018 WL 6191039, at *11 (S.D.N.Y. Nov. 28, 2018); *see also, Henry v. Morgan's Hotel Group, Inc.* 2018 WL

502711 (United States District Court, S.D. New York January 22, 2018) (where district court issued a sanction order of preclusion of evidence).

As has been argued throughout this brief, appellant did not intentionally destroy evidence to avoid turning it over to the appellees. Appellant's conduct may have been reckless or negligent but was not deliberate for the sole purpose of avoiding discovery requests. In *Turner v. Hudson Transit Lines, Inc*. 142 F.R.D. 68 (United States District Court, S.D. New York September 27, 1991) "a personal injury action arising out of a motor vehicle collision on the New Jersey Turnpike. Nathan Turner, who was a passenger in a bus involved in the accident, has sued the owner and operator of the bus, alleging that he sustained injuries because the bus was improperly equipped or negligently driven." *Id.* The court held that the plaintiff "did not intentionally destroy evidence, its reckless conduct did result in loss of the records, and its subsequent discovery responses misled the Court and opposing counsel." The court in *Turner* considered the intent of the destroyer of evidence in assessing whether an adverse inference sanction was warranted. The Court found that "the state of mind of a party that destroys evidence is a major factor in determining whether an adverse inference is the appropriate sanction. Where the destruction is intentional—that is, where the destroyer intended to prevent use of the evidence in litigation—courts clearly have the power to invoke such an inference." *See  Capellupo v. FMC Corp., 126 F.R.D. 545 (D.Minn.1989).*

21

The *Turner* court also "implied that in other circumstances it might indeed be appropriate to draw an adverse inference even though the destruction was merely negligent." *Turner, supra.*

In considering the efficacy of an adverse inference sanction, the *Turner* court held that "this sanction should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Id.*

On this record the facts of this case make the case for unintentional, reckless, or negligent destruction of documents. Accordingly, the sanction that should have been imposed was one of adverse inference, not the drastic sanction of dismissal. *See, Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 76 (S.D.N.Y. 1991).

The non-party witness testimony of Josue Rondau contradicted appellant's testimony regarding how she was able to retrieve the penis picture from her telephone. The district court abused its discretion when it factored this testimony

into its decision to issue a dismissal of this action. Mr. Rondau's contradictory testimony to that of the appellant should not be dispositive. Furthermore, although the district court found appellant's contradictory affidavits reckless, such finding should not have risen to the level of a dismissal. As in summary judgment motions where the general rule is that "a district court may not discredit a witness's testimony on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury," such similar legal analysis should have been considered in the district court's determination of the sanction motion. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir.2010) *cited in Moll v. Telesector Res. Grp., Inc.,* 760 F.3d 198, 206 (2d Cir. 2014). Likewise, it was therefore an error for the district court to consider the non-party witness's testimony as dispositive. *See also, Gutierrez v. New York* 2021 WL 681238 (United States District Court, E.D. New York February 22, 2021) (In ordinary cases when a district court is faced with "the contradictory deposition testimony [or declaration] of a fact witness ..., the general rule remains that a district court may not discredit a witness's deposition testimony [or declaration] on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury.")

On the heels of the non-party witness's testimony contradicting appellant's testimony of how she was able to retrieve the penis picture, appellees try to

persuade this Court that they were never given the picture of Mr. Denty's anatomy at the outset of discovery submissions. Appellees misled the district court and attempt to mislead this court that they did not receive the subject picture until well into the discovery phase of the litigation. In fact, the appellees were in receipt of the penis picture in 2019 when the litigation began as reflected in appellant's discovery disclosures. (A-474, A-495)

## C. <u>Duration of Noncompliance Did Not Prejudice Appellees</u>

This action began in 2019. During the height of the COVID-19 pandemic, the appellant's deposition was conducted via zoom over four days in 2020 and 2021. Depositions of Amtrak's employees were also conducted during the pandemic via zoom in 2021. Discovery was continuing in spite of the world-wide coronavirus.

The appellant 588never refused to appear at any of her four depositions. Unlike *Phelan v. Cambell*, 507 Fed. Appx. 14 (United States Court of Appeals, Second Circuit January 3, 2013) where *pro se* litigant refused to be deposed and court accordingly found willfulness on the part of the plaintiff, and thereby dismissed the action, again there can be no interpretation of willfulness by the appellant herein. Also, in *Embuscado v. DC Comics*, 347 Fed.Appx. 700 (United States Court of Appeals, Second Circuit October 1, 2009) 2009 WL 3160990, the *pro se* litigant

did not produce documents <u>and</u> did not appear at a deposition, the court held for dismissal of the action. (Emphasis added).

### D. <u>The District Court Failed to Give An Explicit Warning</u>

Where there is "intractability," where the plaintiff is entrenched and "unpersuadable" to change her position, the court in *Lee v. Katz* 669 Fed. Appx. 57 (Conn. October 07, 2016) noted that Lee had been reminded of her discovery obligations and warned of the consequences of non-compliance on numerous occasions. Here, the appellant exhibited no such behavior and accordingly, should have been warned by the district court that a dismissal was forthcoming.

Appellees argue that appellant was warned that a dismissal was imminent. They cite to conversation they had with appellant's counsel whereby they note, ". . . but she insists on continuing with this lawsuit despite the overwhelming amount of contradictory testimony by Plaintiff and discovery misconduct conducted by Plaintiff and her counsel." (A-159). Appellees disregard the fact that the appellant's counsel had a plausible theory for reliance on plaintiff's facts. (A-13-A-21). Moreover, no witnesses exist other than the plaintiff and defendant Mr. Denty. As the court noted in *Mealus v. Nirvana Spring Water NY,* 2015 WL 4546023 (N.D.N.Y. 2015), in adopting Plaintiff's counsel's argument, the court held that "no witness exists other than the Plaintiff and Defendant for a majority of Plaintiff's

allegations," and that "there are many cases which proceed to trial based solely on the testimony of the plaintiff because the acts complained of occurred only in the presence of one harasser and one victim." *Mealus v. Nirvana Spring Water N.Y. Inc.,* No. 7:13-CV-313 MAD/DEP, 2015 WL 4546023, at *7 (N.D.N.Y. July 28, 2015). That being the case here, there was no reason for appellant to discontinue the case and had no reason to believe that a sanction as draconian as a dismissal with prejudice was on the horizon.

Reverting to *Lewis v. Marlowe, supra* where the "Court explicitly advised Plaintiff in its July 27 Memo Endorsement that if she did not comply with Defendants' discovery demands, she "face[d] the possibility of certain sanctions, including dismissal," no such explicit warning was afforded the appellant herein. The *Lewis* court further noted that "[a]lthough severe sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply, Plaintiff was on notice that her case could be dismissed if she continued to disregard the Court's discovery orders." Here, appellant was not on notice that her case could be dismissed if she continued to be found noncompliant.

## **CONCLUSION**

The district court failed to make specific findings required to consider and impose a lesser sanction rather than the litigation ending sanction of dismissal and consequently made a series of factual errors and legal errors. Accordingly, the district court's decision should be reversed.

Dated:     Hollis, New York
           April 17, 2023

                              Respectfully submitted,


                              /s/  René Myatt
                              RENÉ MYATT, ESQ.
                              204-04 Hillside Avenue, 2nd Floor
                              Hollis, New York 11423
                              (718) 468-3588
                              myattlegal@gmail.com

                              *Counsel for Plaintiff - Counter Defendant - Appellant*

## Certification of Compliance

Pursuant to Rule 32(a)(7)(B) of the Rules of Appellate Procedure, the foregoing brief has 14 point Times New Roman type, is double-spaced, has margins of at least one inch on all sides, and contains less than 7,000 words.

Dated: April 18, 2023

/s/ *Rene Myatt*